Timothy Bechtold
Bechtold Law Firm, PLLC
P.O. Box 7051
Missoula, MT 59807
406-721-1435
tim@bechtoldlaw.net

      Attorneys for CARD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| BNSF,<br><br>  Plaintiff<br><br>vs.<br><br>CARD,<br><br>  Defendant. | CV-19-40-M-DLC<br><br>**ANSWER<br>AND JURY DEMAND** |

The Center for Asbestos Related Disease, Inc. (CARD) submits its Answer, Affirmative Defenses, and Jury Demand and states as follows by separately delineated paragraphs:

1.    CARD lacks sufficient knowledge to either admit or deny, therefore denies.

2.    Admit.

3.    The allegations in paragraph 3 require a legal conclusion therefore no response is required. To the extent any further response is deemed required, CARD denies.

4.      The allegations in paragraph 4 require a legal conclusion therefore no response is required. To the extent any further response is deemed required, CARD admits it is found in the District of Montana.

5.      CARD lacks sufficient knowledge to either admit or deny, therefore denies.

6.      CARD lacks sufficient knowledge to either admit or deny, therefore denies.

**7.**      CARD lacks sufficient knowledge to either admit or deny, therefore denies.

8.      CARD lacks sufficient knowledge to either admit or deny, therefore denies.

9.      CARD lacks sufficient knowledge to either admit or deny, therefore denies.

10.      Admit that W.R. Grace owned the mine from 1963-1990; admit that the raw ore extracted from Zonolite Mountain contained vermiculite, Libby asbestiform amphiboles, asbestos, and other minerals; admit that Grace represented and marketed its product as safe; admit that plaintiffs have alleged claims against Grace; admit that plaintiffs have alleged claims against BNSF and others for ADR caused by environmental exposure; deny the remainder.

11.      Admit.

12.    Admit.

13.    Admit.

14.     Admit.

15.    CARD lacks sufficient knowledge to either admit or deny, therefore

denies.

16.    Admit that CARD is primarily funded by the receipt of federal grant

monies administered by the Agency for Toxic Substances and Disease Registry,

which is part of the Centers for Disease Control.

17.    Admit.

18.    Admit.

19.    Admit.

20.    Admit.

21.    Admit.

22.    Admit that the federal government extended CARD's grant by another

five years on July 19, 2019, and deny the remainder.

23.    Admit.

24.    Admit.

25.    Admit that Pilot Program services are for residents in Lincoln,

Flathead, Glacier, Lake, Mineral, Missoula, and Sanders counties in Montana OR

Ferry, Lincoln, Pend Orielle, Spokane, Stevens, and Whitman counties in

Washington, OR Benewah, Bonner, Boundary, Clearwater, Kootenai, Latah, and

Shoshone counties in Idaho; admit the remainder.

26.     Admit.

27.     Admit.

28.     Admit that a qualifying condition for Medicare coverage and Pilot

Program benefits is that CARD patients must be diagnosed with one of the

qualifying conditions on the Environmental Health Hazards Checklist, and deny

the remainder.

29.     Admit that pursuant to 42 USC §1881A(e)(2)(B)(i)(I), three of the

primary qualifying impairments are "Asbestosis, pleural thickening, or pleural

plaques," and deny the remainder.

30.     Admit that pursuant to 42 USC §1881A(e)(2)(B)(i)(I) & (II), the

diagnosis for "Asbestosis, pleural thickening, or pleural plaques" is "established by

(I) interpretation by a 'B Reader' qualified physician of a plain chest x-ray or

interpretation of a computed tomographic radiograph of the chest by a qualified

physician, as determined by the Secretary; or (II) such other diagnostic standards

as the Secretary specifies, except that this clause shall not apply to pleural

thickening or pleural plaques unless there are symptoms or conditions requiring

medical treatment as a result of these diagnoses," and deny the remainder.

31.     Admit that pursuant to 42 USC §1881A(e)(2)(B)(i)(I) & (II), the diagnosis for "Asbestosis, pleural thickening, or pleural plaques" is "established by (I) interpretation by a 'B Reader' qualified physician of a plain chest x-ray or interpretation of a computed tomographic radiograph of the chest by a qualified physician, as determined by the Secretary; or (II) such other diagnostic standards as the Secretary specifies, except that this clause shall not apply to pleural thickening or pleural plaques unless there are symptoms or conditions requiring medical treatment as a result of these diagnoses," and deny the remainder.

32.     Deny

33.     CARD lacks sufficient knowledge to either admit or deny, therefore denies.

34.     The allegations in paragraph 34 require a legal conclusion therefore no response is required. To the extent any further response is deemed required, CARD denies.

35.     Admit that the EHH Checklist diagnosis code for both "Asbestosis" and "Pleural thickening Pleural plaques" is 5010, and deny the remainder.

36.     Admit that the EHH is signed and dated by a physician and submitted by CARD to the federal government to allow CARD patients to get an EHH designation on their Medicare coverage, and deny the remainder.

37.     Admit that the EHH Checklist quotes part of 42 USC §1881A(e)(2)(B)(i)(I) & (II), and deny the remainder.

38.     Admit that CARD physicians have signed and dated the Environmental Health Hazards Checklist for 3414 CARD patients, and deny the remainder.

39.     Admit that CARD's diagnoses have been based on ATS 2004 criteria, and deny the remainder.

40.     Admit.

41.     Admit.

42.     Admit that Dr. Black is not a board-certified pulmonologist.

43.     Admit that Dr. Black is not a board-certified radiologist

44.     Admit.

45.     Admit that CARD does not currently employ a board-certified pulmonologist, a board-certified radiologist, or a NIOSH certified B Reader.

46.     Admit.

47.     Admit.

48.     Admit.

49.     Admit that Dr. Black and other medical providers at CARD have diagnosed lamellar pleural thickening as an asbestos-related disease, and deny the remainder.

50.     CARD lacks sufficient knowledge to either admit or deny, therefore denies.

51.     Admit that Dr. Black and CARD providers believe that this condition is unique to Libby amphibole exposure when compared to commercial asbestos exposure and that this condition is not readily apparent to the untrained eye on radiographic studies such as x-rays and CT scans; deny the remainder.

52.     Admit.

53.     Admit that Dr. Black has stated that he can perceive signs of asbestos-related disease on CT scans caused by the Libby amphibole, and that Dr. Black has stated, "What the mind does not know, the eye does not see," and deny the remainder.

54.     Admit that CARD physicians diagnose CARD patients pursuant to ATS criteria, including recognition of  pleural thickening, and deny the remainder.

55.     Deny.

56.     Admit that CARD physicians diagnose asbestos-related disease based upon observed lamellar pleural thickening and ATS criteria, and deny the remainder.

57.     Admit that lamellar pleural thickening is a basis for CARD's certification on EHH Checklists that patients have asbestos-related diseases, and deny the remainder.

58.    CARD lacks sufficient knowledge to either admit or deny, therefore denies.

59.    CARD lacks sufficient knowledge to either admit or deny, therefore denies.

60.    CARD lacks sufficient knowledge to either admit or deny, therefore denies.

61.    Admit that CARD has interpreted 4619 CT scans and determined 2696 to be abnormal, and deny the remainder.

62.    Deny.

63.    Admit that CARD's contract with ATSDR requires radiologists to review x-rays and CT scans, and deny the remainder.

64.    Admit.

65.    CARD lacks sufficient knowledge to either admit or deny, therefore denies.

66.    Admit that Lincoln County received a grant in 2009 for screening, and CARD lacks sufficient knowledge to either admit or deny, therefore denies.

67.    Admit that Lincoln County received a grant in 2009 for screening, and CARD lacks sufficient knowledge to either admit or deny, therefore denies.

68.    Admit that Lincoln County received a grant in 2009 for screening, and CARD lacks sufficient knowledge to either admit or deny, therefore denies.

69.     Admit that radiology technicians take x-rays and CT scans of CARD patients, and deny the remainder.

70.     Admit that images ordered by CARD at Cabinet Peaks are read by a local radiologist, and deny the remainder.

71.     Admit that CARD's ATSDR grant requires an outside read radiologist panel, which is composed five radiologists who are NIOSH-certified B readers, and three of whom are thoracic radiologists, and deny the remainder.

72.     Admit that CARD's ATSDR grant requires an outside read radiologist panel, which is composed five radiologists who are NIOSH-certified B readers, and three of whom are thoracic radiologists, and deny the remainder.

73.     Admit that CARD physicians often diagnose patients with ARD before the patient's CT scan is interpreted by qualified outside radiologists, and deny the remainder.

74.     Admit that CARD physicians often diagnose patients with ARD before the patient's CT scan is interpreted by qualified outside radiologists, and deny the remainder.

75.     Deny.

76.     Deny.

77.     Admit that it is well-known to CARD and its staff that CARD often diagnoses patients without an outside radiologist's CT interpretation, and deny the remainder.

78.     Admit.

79.     Admit that CARD is aware of the differences between the readings of CT scans by Dr. Black and outside radiologists, and deny the remainder.

80.     Admit that CARD maintains a screening database, and deny the remainder.

81.  Admit that CARD is aware of the differences between the readings of CT scans by Dr. Black and outside radiologists, and deny the remainder.

82.     CARD lacks sufficient knowledge to either admit or deny, therefore denies.

83.     Admit.

84.     Admit that the CARD screening database indicates that CARD has diagnosed asbestos related disease in 37% of its patients, and deny the remainder.

85.     Admit that CARD had obtained 4619 CT scans for its patients by February 28, 2021, and deny the remainder.

86.     Admit that CARD has interpreted 4619 CT scans and determined 2696 to be abnormal, and deny the remainder.

87.     Admit that the outside thoracic radiologist B readers have found abnormalities in 34% of the CT scans, and deny the remainder.

88.     Admit.

89.     Admit that abnormalities could be consistent with rib fractures, prior thoracic surgery, radiation therapy, or the use of certain medications, or autoimmune disease; and deny the remainder.

90.     CARD lacks sufficient knowledge to either admit or deny, therefore denies.

91.     Deny.

92.     Deny.

93.     Admit that 375 patients were reported eligible for Medicare, and deny the remainder.

94.     CARD lacks sufficient knowledge to either admit or deny, therefore denies.

95.     CARD lacks sufficient knowledge to either admit or deny, therefore denies.

96.     Admit that CARD has diagnosed patients with ARD whose CT scans were not found to have abnormalities by thoracic radiologists on the B reader panel, and deny the remainder.

97.     Admit.

98.     Admit.

99.     Admit that the peer review panel selected by ATSDR to review CT scans often disagrees with Dr. Black's diagnoses, and deny the remainder.

100.    Admit that CARD submitted all of its patients diagnosed with ARD for Medicare coverage if the patients so desired, and deny the remainder.

101.    Deny.

102.    This paragraph requires no answer.

103.    Admit.

104.    Admit.

105.    Admit.

106.    Admit.

107.    Admit that CARD has an annual audit and prepares an Annual Progress Report, a Final Progress Report, and a Federal Financial Report, and deny the remainder.

108.    Admit that these reports are uploaded by CARD to the grants management system, and expenses are reimbursed by grant funds, and deny the remainder.

109.    Deny.

110.    Deny.

111.    Deny.

112.   Deny.

113.   Deny.

114.   Deny.

115.   CARD lacks sufficient knowledge to either admit or deny, therefore denies.

116.   Admit.

117.   Admit that CARD requests reimbursements through the grants management system, called GrantSolutions; CARD lacks sufficient knowledge to either admit or deny the remainder, therefore denies.

118.   Admit that CARD requests reimbursements through the grants management system, called GrantSolutions; CARD lacks sufficient knowledge to either admit or deny the remainder, therefore denies.

119.   CARD lacks sufficient knowledge to either admit or deny, therefore denies.

120.   Admit.

121.   Deny.

122.   Admit that the federal government has awarded CARD grant money totaling approximately $500,000 annually to pay outside readers to interpret CT scans and x-rays, and deny the remainder.

123.   Admit that CARD diagnoses patients before outside CT scan reports are sent to CARD, and deny the remainder.

124.   Admit.

125.   Admit that CARD does not consider B-reader reports for asbestos-related diagnostic purpose, and deny the remainder.

126.   Admit that CARD does not consider B-reader reports for asbestos related diagnostic purpose, and deny the remainder.

127.   Admit that CARD has diagnosed patients with ARD whose CT scans were not found to have abnormalities by thoracic radiologists on the B reader panel, and deny the remainder.

128.   Deny.

129.   The allegations in paragraph 129 require a legal conclusion therefore no response is required.

130.   Admit.

131.   Deny.

132.   The allegations in paragraph 132 require a legal conclusion therefore no response is required. To the extent any further response is deemed required, CARD denies.

133.   Admit.

134.   Admit.

135.   Admit.

136.   Admit.

137.   Admit.

138.   Admit that CARD clinicians have long-standing personal and professional relationships with Mount Sinai clinicians, and deny the remainder.

139.   Admit that both CARD and Mount Sinai study and treat ARD, and deny the remainder.

140.   Admit.

141.   Admit.

142.   Deny.

143.   Admit that the program director and principal investigator of the Mount Sinai Prime Award was a B-Reader funded by CARD's grants, and deny the remainder.

144.   Admit.

145.   Admit.

146.   Admit.

147.   Admit.

148.   Admit that by accepting the Mount Sinai funds, CARD certified that it had no conflicts of interest and that the funds would be used in accordance with federal rules and regulations governing federal grants, and deny the remainder.

149.   Deny.

150.   Deny.

151.   Admit that when CARD diagnoses patients with ARD, the diagnosis is notated on the Environmental Health Hazards Checklist and this qualifies patients for Medicare coverage, and deny the remainder.

152.   Admit that when CARD diagnoses patients with ARD, the diagnosis is notated on the Environmental Health Hazards Checklist and this qualifies patients for Medicare coverage, and deny the remainder.

153.   Admit that when CARD diagnoses patients with ARD, the diagnosis is notated on the Environmental Health Hazards Checklist and this qualifies patients for Medicare coverage, and deny the remainder.

154.   Admit that when CARD diagnoses patients with ARD, the diagnosis is notated on the Environmental Health Hazards Checklist and this qualifies patients for Medicare coverage, and deny the remainder.

155.   Deny.

156.   Admit that CARD's patients who are enrolled in Medicare have their medical treatments covered by Medicare, and deny the remainder.

157.   Deny.

158.   Deny.

159.   Deny.

160.   Admit that when CARD diagnoses patients with asbestosis or pleural thickening Pleural plaques, the diagnosis is notated on the Environmental Health Hazards Checklist, and this may help qualify patients for Social Security Disability benefits, and deny the remainder.

161.   Admit that when CARD diagnoses patients with asbestosis or pleural thickening Pleural plaques, the diagnosis is notated on the Environmental Health Hazards Checklist, and CARD provides patients with Form SSA-827, and deny the remainder.

162.   Admit that CARD has a case manager whose responsibilities include assisting CARD patients with Pilot Program benefits, and deny the remainder.

163.   Admit that when CARD diagnoses patients with asbestosis or Pleural thickening Pleural plaques, the diagnosis is notated on the Environmental Health Hazards Checklist, and CARD provides patients with Pilot Program forms, and deny the remainder.

164.   Deny.

165.   Deny.

166.   CARD lacks sufficient knowledge to either admit or deny, therefore denies.

167.   CARD lacks sufficient knowledge to either admit or deny, therefore denies.

168.   CARD lacks sufficient knowledge to either admit or deny, therefore denies.

169.   CARD lacks sufficient knowledge to either admit or deny, therefore denies.

170.   Admit that CARD physicians have prescribed narcotic and opioid pain medications, and deny the remainder.

171.   Admit.

172.   Deny.

173.   Deny.

174.   Deny.

175.   CARD lacks sufficient knowledge to either admit or deny, therefore denies.

176.   CARD lacks sufficient knowledge to either admit or deny, therefore denies.

177.   Deny.

178.   Admit that CARD has patients on disability status due to ARD who receive opioid pain medication, and deny the remainder.

179.   Admit that when CARD diagnoses patients with asbestosis or pleural thickening/pleural plaques, the diagnosis is notated on the Environmental Health

Hazards Checklist, and this may help qualify patients for Social Security Disability benefits, and deny the remainder.

180.   CARD lacks sufficient knowledge to either admit or deny, therefore denies.

181.   CARD lacks sufficient knowledge to either admit or deny, therefore denies.

182.   CARD lacks sufficient knowledge to either admit or deny, therefore denies.

183.   CARD lacks sufficient knowledge to either admit or deny, therefore denies.

184.   Deny.

185.   Deny.

186.   This paragraph requires no answer.

187.   Deny

188.   This paragraph requires no answer.

189.   Deny.

190.   Deny.

191.   The allegations in paragraph 132 require a legal conclusion therefore no response is required. To the extent any further response is deemed required, CARD denies.

192.   Deny.

193.   Deny.

194.   This paragraph requires no answer.

195.   Deny.

196.   Deny.

197.   Deny.

198.   This paragraph requires no answer.

199.   Deny.

200.   Deny.

201.   Deny.

202.   Deny.

AFFIRMATIVE DEFENSES

First Affirmative Defense

203.   BNSF's Complaint fails to state a claim upon which relief can be

granted against CARD.

Second Affirmative Defense

204.   BNSF's claimed damages, if any, result in whole or in part from the

conduct of third parties, including individuals and/or entities, for whom CARD is

not responsible.

Third Affirmative Defense

205.   BNSF's claims are barred by the applicable statutes of limitation.

**WHEREFORE,** CARD respectfully requests the following relief from this Court:

1. For judgment in its favor on all counts in BNSF's Second Amended

    Complaint;

2. Judgment in its favor on one or more of its Affirmative Defenses;

3. That BNSF's action be dismissed with prejudice;

4. For attorney fees;

5. For reimbursement of costs and expenses of suit; and

6. For all such further relief as the Court deems fair and just.

Dated this 6th day of May, 2021.

/s/Timothy M. Bechtold
Bechtold Law Firm, PLLC
                    Attorneys for CARD

**CARD HEREBY DEMANDS A TRIAL BY JURY.**

Dated this 6th day of May, 2021.

/s/Timothy M. Bechtold
Bechtold Law Firm, PLLC