Timothy Bechtold
Bechtold Law Firm, PLLC
P.O. Box 7051
Missoula, MT 59807
406-721-1435
tim@bechtoldlaw.net

Attorneys for CARD

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BNSF,<br><br>   Plaintiff<br><br>vs.<br><br>CARD,<br><br>   Defendant. | CV-19-40-M-DLC<br><br>**CARD'S PRELIMINARY PRETRIAL STATEMENT** |

The Center for Asbestos Related Disease, Inc. (CARD) now submits it Preliminary Pretrial Statement.

**A. Brief Facts**

Libby, Montana was the site of a vermiculite mining and processing operation from the early 1920's through 1990. While it was in operation, Libby was the world's largest source of vermiculite. The commercial uses of vermiculite include insulation, fire proofing, and as a soil conditioner. Unfortunately, Libby vermiculite is contaminated with amphibole asbestos. This has resulted in asbestos-related morbidity and mortality in vermiculite workers, their family members, and

residents with neither occupational nor para-occupational exposure. Pervasive exposure has resulted in Lincoln County Montana having the highest asbestosis mortality rate in the U.S. In June 2009, the U.S Environmental Protection Agency declared a public health emergency for the Libby Asbestos Site, which includes the cities of Libby and Troy.

Reports of pervasive asbestos-related health outcomes in Libby prompted a concerted response by the federal government in 1999. A large component of this response was community-based screening conducted by the Agency for Toxic Substances and Disease Registry (ATSDR) in 2000 and 2001 in which 7,307 persons were screened. Additional screening was funded by ATSDR via a grant to the Montana Department of Health and Human Services 2003-2008 and to the Lincoln County Health Department 2009-2011. Language was included in the Affordable Care Act (ACA, Public Law 111-148) to continue to make screening available to persons with potential past exposure to vermiculite while they lived, worked or recreated in the Libby area. Persons with positive screening results may be eligible for Medicare benefits.

In 2000, St. John's Lutheran Hospital in Libby formed a department to provide screening, diagnosis, treatment and monitoring for those exposed to Libby amphibole asbestos. In 2003, this department essentially split off into a separate organization, CARD, for a number of reasons, including taking care of a growing

number of people affected, providing holistic patient care, and pursuit of research to improve treatments and potentially find a cure.

CARD is primarily funded by the receipt of federal grant monies administered by ATSDR. ATSDR has funded three grants to CARD, the first from 7/1/2011-6/30/2015; the second from 9/1/2015-8/31/2019; and the third from 9/1/2019-8/31/2024. The title of the Funding Opportunity for these grants is "Affordable Care Act Program for Early Detection of Certain Medical Conditions Related to Environmental Health Hazards."  The stated purposes of the funding are to (1) provide medical screening to persons with possible exposure to amphiboles that occurred in Libby and Troy, Montana; (2) conduct nationwide outreach to raise awareness of the screening program among persons eligible to participate and of the availability of certain Medicare benefits; and (3) provide health education to detect, prevent, and treat environmental health conditions.

Pursuant to the Affordable Care Act, 42 USC §1881A(e)(2)(B)(i)(I) & (II), the diagnosis for "Asbestosis, pleural thickening, or pleural plaques" is "established by (I) interpretation by a 'B Reader' qualified physician of a plain chest x-ray or interpretation of a computed tomographic radiograph of the chest by a qualified physician, as determined by the Secretary; or (II) such other diagnostic standards as the Secretary specifies, except that this clause shall not apply to pleural thickening or pleural plaques unless there are symptoms or conditions requiring

Preliminary Pretrial Statement
Page 3

medical treatment as a result of these diagnoses," The HHS Secretary has determined that CARD physicians are qualified under the ACA to review CT scans and diagnose asbestosis, pleural thickening, and pleural plaques. Among other diagnoses, medical providers at CARD have diagnosed lamellar pleural thickening as an asbestos-related disease. CARD providers believe that this pattern of pleural fibrosis is unique to Libby amphibole exposure when compared to commercial asbestos exposure and that this condition is not readily apparent to the untrained eye on radiographic studies such as x-rays and CT scans. Because CARD providers follow their patients, often for decades, they are able to trace the progression of the disease.

The ADSTR grants that fund CARD's operations require outside "B-readers," that is, individuals not at CARD, to review x-rays and CT scans. These B-reads are not used for diagnostic or clinical purposes at CARD, but are included as part of the academic aspects of the funding.

At some time, apparently after the Montana Asbestos Claims Court found BNSF strictly liable for its activities in Lincoln County that caused asbestos-related diseases in people exposed in Libby, BNSF filed a qui tam action against CARD. The Office of Inspector General for the Department of Health and Human Services then contacted CARD and asked CARD to provide extensive information about its

patients and practices. After reviewing the information and interviewing CARD personnel, the United States declined to prosecute BNSF's action against CARD.

BNSF's true motivations in filing the qui tam action are not known to CARD. However, over 1,000 injured persons exposed to asbestos in Libby have pending civil claims against BNSF and other responsible parties.

The Montana Supreme Court has now affirmed the Montana Asbestos Claims Court's finding of strict liability against BNSF. In doing so, the Montana Supreme Court found, "although BNSF cherry picks the record to cite to isolated favorable test results, it is beyond dispute that extensive asbestos existed, at high levels, on BNSF's properties." Specifically, the Montana Supreme Court focused on EPA's Initial Pollution Report for BNSF's downtown Libby railyard that undisputedly showed:

1. "Asbestos contaminated materials were hauled and shipped through the [BNSF] railyard, and spilled into the soil for decades;"

2. "Analytical results have shown asbestos levels in soil from 2-5%" in the railyard;

3. "Baseline monitoring along the track conducted by BNSF has found the highest concentrations measured during the sweeping ranges from 7 to 14 f/cc in air;" and

4. "Visible unexpanded vermiculite remained at Tracks #1, #2 and #3."

Importantly, the Montana Supreme Court noted these measurements were taken "at least a decade after the vermiculite mining operations in Libby had ceased, and after BNSF had attempted to excavate and remediate the property." "Indeed, it is especially relevant that BNSF's railyard was located in downtown Libby and its tracks ran through the town, where Plaintiffs, as citizens of Libby, are claiming they were injured by exposure to asbestos while conducting their daily activities."

The Montana Supreme Court held "BNSF's handling of asbestos under the facts presented here constitutes an abnormally dangerous activity for which BNSF is strictly liable."

### B. Jurisdiction and Venue

Jurisdiction and venue are proper in this court.

### C. Factual & Legal bases of claims

In Counts I, II, and III, BNSF alleges False Claim Act violations against CARD. Count I alleges that CARD presented false claims for payment and made a false record in order to get false claims paid by the government. Count II alleges that CARD made false records or statements and the government paid out money in reliance on the false records or statements. Count III alleges that CARD made false records or statements material to obligations to pay the government, and the government paid out money in reliance on the false records or statements.

The three counts apparently are based upon allegations that the following are false claims:

1. each CARD script for prescription pain medication;

2. each false statement made by CARD to induce the federal government to continue funding CARD's federal grants;

3. each CARD bill, claim, application, statement or invoice for grant money or payment by the federal government for unused, ignored or medically unnecessary B-reads, CT scans, radiographic interpretations or other medically unnecessary treatments;

4. each CARD statement to secure Mt. Sinai sub award funds to pay for CT scans taken *at* CARD;

5. each CARD script, diagnostic record, EHH form or any other statement made by CARD, or caused to be made by CARD, and made in support of claims for payment by the federal government based on a false diagnosis of ARD, and submitted directly or indirectly to Medicare, the Centers for Disease Control, the ATSDR, the Pilot Program, the Social Security Administration or any other government agent or contractor.

*See* Dkt#22 ¶187.

It appears that BNSF is alleging that CARD is diagnosing individuals with asbestos-related diseases, which qualifies these individuals for Medicare or Social

Security disability payments, and thus the government is being defrauded because these individuals do not really have asbestos-related diseases. BNSF's allegations appear to be that CARD's providers are not qualified to diagnose individuals with asbestos-related diseases. Similarly, it appears BNSF is alleging that CARD is wrongfully inducing the government to fund CARD's operations through grants by somehow providing false information to the government. *See* Dkt#22 ¶187. At heart, BNSF essentially alleges that it disagrees with the diagnoses made by CARD providers and therefore the diagnoses are fraudulent.

The defense to BNSF's claims is that CARD's providers are qualified under the ACA to diagnose asbestos-related diseases, and have not provided false information to ATSDR in grant funding requests or reports.

### D. Damages

CARD is not aware of any damages that have been computed in this matter.

### E. Related litigation

There are numerous claims against BNSF proceeding before the Asbestos Claims Court in the State of Montana.

### F. Proposed Stipulations of Fact

Parties have filed a Statement of Stipulated Facts.

## G. Joinder

Parties have agreed to have until September 30, 2021 to add parties or amend pleadings.

## H. Pretrial Disposition

CARD believes that the Court can likely rule on summary judgment.

## I. Persons with Knowledge

1. Brad Black, CARD
2. Tracy McNew, CARD
3. Jim Lockey, Professor Emeritus, University of Cincinnati
4. Albert Miller, Professor of Clinical Medicine, Mt Sinai School of Medicine
5. Tanis Hernandez, former administrative director at CARD
6. Henry Falk, HHS
7. Cheryl Everhart, HHS
8. Theodore Larson, HHS

## J. Insurance

CARD's insurers are currently determining whether to proceed under a reservation of rights.

## K. Settlement

No settlement discussions have taken place, and settlement is unlikely.

## L. Special procedures

CARD is not aware of any necessary special procedures in this matter.

DATED this 6th day of July, 2021.

/s/ Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC