# Exhibit A

Roger Sullivan
Allan M. McGarvey
John F. Lacey
Jinnifer Jeresek Mariman
Dustin Leftridge
Ethan Welder
McGARVEY LAW
345 First Avenue East
Kalispell, MT 59901
(406) 752-5566

*Attorneys for Non-Party McGarvey Law*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| BNSF RAILWAY COMPANY, on behalf of the UNITED STATES OF AMERICA, | Civil Action No. CV-19-40-M-DLC |
|---|---|
| Plaintiff, | |
| vs. | **AFFIDAVIT OF** |
| THE CENTER FOR ASBESTOS RELATED DISEASE, INC. | **ALLAN M. McGARVEY** |
| Defendant. | In Support of Non-Party McGarvey Law's Objection and Motion to Quash BNSF's Subpoena Duces Tecum |

STATE OF MONTANA     )
                     : ss.
County of Flathead   )

I, Allan M. McGarvey, being first duly sworn, deposes and states:

1. I am an attorney with and shareholder of McGarvey Law, and I have knowledge of the matters contained in this declaration.

2. Late in the morning on December 29, 2021, my office began receiving calls from our clients that they had been contacted by a private investigator named Ray Leggett on behalf of BNSF Railway Company ("BNSF"). Those contacts included telephone calls and voice messages. For example, one of those voice messages and one of those telephone conversations were as follows:

1

    a. Voice Message - Yes [Client] My name is Ray Leggett I'm a private investigator I'm not tellin - trying to tell you that your car or your uh warranty uh you know uh, I need to talk to you for just a few minutes if you hav-have a moment and wou-would talk to me, it's a matter involving the Card Clinic. I was given your name and number, ehh if you could give me a call I would so much appreciate it, my number is 4-0-6-2-0-1-1-6-0-7, let me give you that number one more time 4-0-6-2-0-1-1-6-0-7 I won't take more than about 5, 10 minutes of you time, thank you so much have a good day.

    b. Telephone Call – Mr. Leggett asked to speak with deceased Client to which personal representative for deceased Client asked Mr. Leggett what his call was about and who hired him. Mr. Leggett was reluctant to answer, but eventually said it was about the federal case between BNSF and CARD and he was hired by Knight Nicastro MacKay.

3. In response, shortly thereafter, at 11:47 a.m. that same day (December 29, 2021), I called Mr. Leggett at the return number he left in my clients' voice messages and spoke to Mr. Leggett. Mr. Leggett informed me that he had been hired by Knight Nicastro MacKay ("KNM"). KNM provided him with a list of The Center for Asbestos Related Disease, Inc. ("CARD Clinic") patients to contact. Mr. Leggett stated his instructions were to stop any communication upon learning that the person he contacted was represented. I instructed Mr. Leggett to immediately stop contacting our clients.

4. By virtue of my firm's filings on behalf of our clients in the Montana Asbestos Claims Court ("ACC"), KNM has been provided with lists of our clients with claims that have been filed. Specifically, we have filed with the ACC and served on BNSF Master Claims List listing all of our clients on October 15, 2018, January 16, 2019, February 12, 2019, July 11, 2019, October 11, 2019, December 19, 2019, December 23, 2020, and just a few months ago on October 29, 2021. Moreover, beginning in 2018 and continuing through 2019, BNSF and its

attorneys at KNM have been provided detailed ACC-mandated fact sheets for each of our clients detailing, among other things, their active claims, including any W.R. Grace Trust claim.

5.      Thus, at 12:42 p.m. that same day (December 29, 2021), my partner Roger Sullivan sent KNM's attorneys Chad Knight, Adam Duerk, Jim Roberts, and Nadia Patrick an email attached hereto as **Exhibit 1** which stated as follows:

> Counsel,
> We just learned that you directed your law firm's private investigator(s) to contact by telephone named individuals <u>known by you to be our clients</u>. We hereby demand that you immediately confirm in writing that you have taken full and effective action to cause these contacts to cease. Additionally, we demand that you immediately provide us with a list of our law firm's clients whose names and/or phone numbers you provided to investigator(s) for the purpose of making direct telephone calls, together with all information provided to the investigator(s) about the subject and scope of the inquiries.
> We further demand that you immediately provide to us a report including the names of all of our clients contacted, date of contact, and any information, records, note or recordings of conversations with any of our clients.
> We ask you to immediately provide a full explanation of how this violation has occurred so that our response may be appropriately fashioned to the facts.

**Exhibit 1** (emphasis added).

6.      However, despite my conversation with Mr. Leggett at 11:47 a.m. and despite Mr. Sullivan's email to KNM at 12:42 p.m., Mr. Leggett continued to contact our clients. Specifically, at 2:28 p.m. that same day (December 29, 2021), Mr. Leggett sent a text message to our client stating as follows:

> Text: Hi [Client], this is Ray Leggett the investigator that you spoke with last night. What would be a good time to speak with you for about 10 minutes today?

7.      Because Mr. Leggett did not stop contacting our clients despite my conversation with him at 11:47 a.m. and despite Mr. Sullivan's 12:42 p.m. email to KNM (to which we had not received a response), my partner Roger Sullivan sent a second email to KNM's attorneys

3

Chad Knight, Adam Duerk, Jim Roberts, and Nadia Patrick at 4:54 p.m. attached hereto as **Exhibit 1:**

> Counsel,
> Notwithstanding my below email to you earlier today, and our instruction to your investigator to cease contacting our clients, your law firm's private investigator has continued to contact named individuals known by you to be our clients.
> While we have exchanged emails from Nadia Patrick on other matters this afternoon, we have not heard from her or any other Knight Nicastro attorney regarding this matter.
> We reiterate our demand to immediately stop this contact of our clients, as well as our other demands set forth in my earlier email below. Please confirm in writing that you have done so.
> Sincerely,
> Roger Sullivan

8. Additionally, we learned from a client that Mr. Leggett was not following the alleged instructions he claimed to be following (i.e. stop any communication upon learning that the person contacted was represented). Specifically, our client informed us on December 29, 2021, that on December 28, 2021:

> Mr. Leggett called client and asked client if client had representation. <u>Client's reply was YES</u>. Mr. Leggett proceeded to ask client if client knew of the federal case between CARD and BNSF. Client's reply was NO. Mr. Leggett continued to ask client if client knew CARD was giving out false diagnoses. Client's reply was NO. Mr. Leggett then asked Client if Client knew of anyone besides CARD that was looking over ARD cases and if Client had any family members diagnosed with ARD. Client's reply was that he could not speak on others' behalf and Client terminated the call.

9. Because Mr. Leggett did not stop contacting our clients as I had instructed him in my 11:47 a.m. telephone call with him and was not following the alleged instructions he claimed to be following, I sent Mr. Leggett the following email at 5:13 p.m. attached hereto as **Exhibit 2:**

4

> Mr. Leggett,
> This is to repeat this law firm's demand that you stop contacting our clients on behalf of the Knight Nicastro law firm. Today, at 11:47 a.m., I called the number you left with my client and spoke to you. You stated that you had indeed contacted named individuals who are, in fact, clients of this firm, and that you received the names of people to call from the Knight Nicastro law firm. I demanded that you immediately stop contacting this law firm's clients.
> In that phone call, you stated that your instructions from Knight and Nicastro were to stop any communication upon learning that the person contacted was represented. Such instruction does not account for the fact that the Knight Nicastro knows that we represent these clients. Moreover, I have since confirmed that that protocol was not followed, either in messages left with my clients or in your in-person phone calls. Specifically, after being told of client's legal representation, you have continued to ask questions about CARD's ARD diagnoses and other matters directly pertaining to this firm's clients' asbestos injury claims.
> I have further learned that, after that 11:47 phone call, you have continued to contact this firm's clients.
> I again demand this contact with my clients cease. I further demand that you immediately confirm in writing that you have taken all measures necessary to assure that my clients, whose names and/or numbers were supplied to you by the Knight Nicastro law firm are not contacted at all.

10. Finally, on January 3, 2022, 5 days after Mr. Sullivan's emails, KNM attorney Jim Roberts responded to Mr. Sullivan's emails with the following attached as **Exhibit 1**:

> Thanks for your emails. We have run inquiry on this situation and have confirmed no inappropriate contact with any of your current clients was made by our retained investigator.

11. However, Mr. Robert's statement cannot be reconciled with paragraph 8 above where Mr. Leggett continued to inquire of our client after he learned that our client was represented. Moreover, KNM has not provided us with the information we requested about the clients KNM contacted.

12. Many of our clients are elderly and some get confused even when contacted by our firm regarding their claims. Because KNM and BNSF know exactly who our clients are and

5

could have easily excluded those individuals from the list KNM gave its investigator, it appears KNM and/or BNSF was trying to capitalize on that potential for confusion by knowingly contacting our clients.

13. Because KNM's investigator did not stop contacting our clients, we had to communicate with our clients about KNM's improper contact. As a result, our office fielded many calls and emails from our clients in the subsequent days regarding KNM's improper contact.

14. BNSF takes issue with my firm's communications with CARD regarding Medicare diagnostic codes. As is required by law, Medicare liens must be resolved prior to a client receiving any settlement proceeds. Thus, ensuring Medicare codes are accurate and understood is essential to properly resolving Medicare liens. It is common practice in Montana for attorneys' offices to contact providers regarding Medicare diagnostic codes for this very purpose. My firm's contact of the CARD Clinic in that regard was no different than our contacts of other providers.

Executed on this 20th day of January, 2022.

_____
ALLAN M. McGARVEY

SUBSCRIBED AND SWORN to before me this 20th day of January, 2022

ATHENA STEFFLER
NOTARY PUBLIC for the
STATE OF MONTANA
Residing at Kalispell, MT
My Commission Expires
January 10, 2026

_____
Notary Public for the State of Montana

6

# Exhibit 1

**Roger Sullivan**

| | |
|---|---|
| **From:** | James E. Roberts <Roberts@knightnicastro.com> on behalf of James E. Roberts |
| **Sent:** | Monday, January 3, 2022 3:54 PM |
| **To:** | Roger Sullivan |
| **Cc:** | Chad M. Knight; Nadia H. Patrick; W. Adam Duerk; attorneys; Charidee F. Bellamy; Adria R. Kassion |
| **Subject:** | Re: Unauthorized contact of our clients |

Thanks for your emails. We have run inquiry on this situation and have confirmed no inappropriate contact with any of your current clients was made by our retained investigator.



James E. Roberts, Member
283 W. Front St., Ste. 203, Missoula, MT 59802
roberts@knightnicastro.com
P: 406-206-7052   F: 816-396-6233

Boulder • Billings • Kansas City • Missoula • Chicago • Peoria • St. Louis



On Dec 29, 2021, at 4:54 PM, Roger Sullivan <rsullivan@mcgarveylaw.com> wrote:

Counsel,

Notwithstanding my below email to you earlier today, and our instruction to your investigator to cease contacting our clients, your law firm's private investigator has continued to contact named individuals known by you to be our clients.

While we have exchanged emails from Nadia Patrick on other matters this afternoon, we have not heard from her or any other Knight Nicastro attorney regarding this matter.

We reiterate our demand to immediately stop this contact of our clients, as well as our other demands set forth in my earlier email below. Please confirm in writing that you have done so.

Sincerely,

Roger Sullivan

1

**From:** Roger Sullivan <rsullivan@mcgarveylaw.com>
**Sent:** Wednesday, December 29, 2021 12:39 PM
**To:** 'Chad M. Knight' <knight@knightnicastro.com>; 'Nadia H. Patrick' <npatrick@knightnicastro.com>; 'W. Adam Duerk' <Duerk@knightnicastro.com>; 'James E. Roberts' <Roberts@knightnicastro.com>
**Cc:** attorneys <attorneys@mcgarveylaw.com>
**Subject:** Unauthorized contact of our clients

Counsel,

We just learned that you directed your law firm's private investigator(s) to contact by telephone named individuals known by you to be our clients. We hereby demand that you immediately confirm in writing that you have taken full and effective action to cause these contacts to cease. Additionally, we demand that you immediately provide us with a list of our law firm's clients whose names and/or phone numbers you provided to investigator(s) for the purpose of making direct telephone calls, together with all information provided to the investigator(s) about the subject and scope of the inquiries.

We further demand that you immediately provide to us a report including the names of all of our clients contacted, date of contact, and any information, records, note or recordings of conversations with any of our clients.

We ask you to immediately provide a full explanation of how this violation has occurred so that our response may be appropriately fashioned to the facts.


**McGarveyLaw**

**Roger Sullivan**
Senior Partner
📞 (406) 752-5566  📠 (406) 752-7124
🌐 www.mcgarveylaw.com
📍 345 First Avenue East, Kalispell, MT 59901

Email Disclaimer: The information contained in this e-mail, and in any accompanying documents, may constitute confidential and/or legally privileged information. The information is intended only for use by the designated recipient(s). Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient please contact the sender by reply email and delete the original message.

# Exhibit 2

Re: contact of McGarvey Law clients — imap://amcgarvey%40mcgarveylaw%2Ecom@imap.gmail.com:...

Case 9:19-cv-00040-DLC   Document 54-1   Filed 01/20/22   Page 12 of 12

**Subject:** Re: contact of McGarvey Law clients
**From:** Allan McGarvey <amcgarvey@mcgarveylaw.com>
**Date:** 12/29/2021, 5:12 PM
**To:** ray@thunderstrikehunter.com
**CC:** attorneys <attorneys@mcgarveylaw.com>, "Chad M. Knight" <knight@knightnicastro.com>, "W. Adam Duerk" <Duerk@knightnicastro.com>, bellamy@knightnicastro.com, kassion@knightnicastro.com, Roger Sullivan <rsullivan@mcgarveylaw.com>, "Nadia H. Patrick" <npatrick@knightnicastro.com>, "James E. Roberts" <Roberts@knightnicastro.com>

Mr. Leggett,

This is to repeat this law firm's demand that you stop contacting our clients on behalf of the Knight Nicastro law firm. Today, at 11:47 a.m., I called the number you left with my client and spoke to you. You stated that you had indeed contacted named individuals who are, in fact, clients of this firm, and that you received the names of people to call from the Knight Nicastro law firm. I demanded that you immediately stop contacting this law firm's clients.

In that phone call, you stated that your instructions from Knight and Nicastro were to stop any communication upon learning that the person contacted was represented. Such instruction does not account for the fact that the Knight Nicastro knows that we represent these clients. Moreover, I have since confirmed that that protocol was not followed, either in messages left with my clients or in your in-person phone calls. Specifically, after being told of client's legal representation, you have continued to ask questions about CARD's ARD diagnoses and other matters directly pertaining to this firm's clients' asbestos injury claims.

I have further learned that, after that 11:47 phone call, you have continued to contact this firm's clients.

I again demand this contact with my clients cease. I further demand that you immediately confirm in writing that you have taken all measures necessary to assure that my clients, whose names and/or numbers were supplied to you by the Knight Nicastro law firm are not contacted at all.

Allan M. McGarvey