Chad M. Knight
James E. Roberts
Nadia Patrick
W. Adam Duerk
Brendan M. Johns (*Admitted Pro Hac Vice*)
KNIGHT NICASTRO MACKAY, LLC
283 W. Front Street, Suite 203
Missoula, Montana 59802
Telephone:  (406) 206-7052
Facsimile: (816) 396-6233
knight@knightnicastro.com
roberts@knightnicastro.com
npatrick@knightnicastro.com
duerk@knightnicastro.com
johns@knightnicastro.com
        *Attorneys for BNSF Railway Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| BNSF RAILWAY COMPANY, on behalf of THE UNITED STATES OF AMERICA<br><br>          Plaintiff,<br><br>vs.<br><br>THE CENTER FOR ASBESTOS RELATED DISEASE, INC.,<br><br>          Defendant. | Civil Action No.: CV-19-40-M-DLC<br><br>**RELATOR'S AMENDED STATEMENT OF DISPUTED FACTS IN RESPONSE TO CARD'S SUPPLEMENTAL STATEMENT OF UNDISPUTED FACTS** |

Relator, BNSF Railway Company ("BNSF"), by and through its attorneys of

record, Knight Nicastro MacKay, LLC, hereby submits the following Amended

Statement of Disputed Facts in Response to CARD's Supplemental Statement of

Undisputed Facts (Doc. 121).   BNSF amends its initial response (Doc. 125) to correct clerical errors and to conform with Local Rule 56.1(b):

### VERBATIM RESPONSE TO CARD'S SUPPLEMENTAL STATEMENT OF UNDISPUTED FACTS

50.     It was the intention of Senator Max Baucus that the Libby-specific portions of the Affordable Care Act provide Medicare coverage to individuals with a diagnosis of an asbestos-related disease. Senator Baucus was aware that some doctors would say that a person qualified, while other doctors would say that same person did not qualify. Exhibit 348, Max Baucus deposition 73:18-75:22.

**Response:**   *Undisputed*.

51.     On September 8, 2022, ATSDR Administrator Rochelle Walensky responded to a CARD *Touhy* request, and granting the request with a limited declaration from ATSDR epidemiologist Theodore Larson. Exhibit 349.

**Response:**   *Undisputed*.

52.     ATSDR has awarded three screening grants to the Center for Asbestos Related Disease (CARD) after passage of the Affordable Care Act. Exhibit 350, Larson Dec ¶5.

**Response:**   *Undisputed*.

53.     The purpose of these screening grants is to (1) provide medical screening to persons with possible exposure to amphibole asbestos that occurred in Libby and Troy, Montana; (2) conduct nationwide outreach to raise awareness of the

screening program among persons eligible to participate and of the availability of certain Medicare benefits; and (3) provide health education to detect, prevent, and treat environmental health conditions. Exhibit 350, Larson Dec ¶6.

**Response:**   *Undisputed that this is Theodore Larson's Statement.*

54.   The grants mandate panels of outside B Readers. Exhibit 350, Larson Dec ¶7.

**Response:**   *Undisputed.*

55.   ATSDR is aware that CARD physicians do not rely solely on the interpretations of the B Readers in making CARD's clinical diagnoses. Exhibit 350, Larson Dec ¶8.

**Response:**   *Undisputed that this is Theodore Larson's Statement.*

56.   ATSDR is aware that CARD physicians' diagnosis rates are higher – often much higher – than the B Readers' CT abnormality positivity rates. Exhibit 350, Larson Dec ¶9.

**Response:**   *Undisputed that this is Theodore Larson's Statement.*

57.   The intention of the screening grants is to refer affected persons with positive screening results for Medicare benefits as soon as possible to ensure that they are treated promptly. Exhibit 350, Larson Dec ¶10.

**Response:**   *Undisputed that this is Theodore Larson's Statement.*

58.    The intention of the screening grants is to be as inclusive as possible in identifying persons with positive screening results, therefore it serves the purposes of the grants to apply inclusive diagnostic criteria. Exhibit 350, Larson Dec ¶11.

**Response:**   *Undisputed that this is Theodore Larson's Statement.*

59.    CARD has reported its CT abnormality positivity rates to ATSDR quarterly, as required. As of a recent quarterly report CARD submitted to ATSDR in March 2022, CARD has read 4,819 CT scans of which CARD's physician interpreted 2,767 as abnormal (57%). Exhibit 350, Larson Dec ¶12.

**Response:**   *Undisputed that this is Theodore Larson's Statement.*

60.    CARD has reported radiologist's CT abnormality positivity rates to ATSDR quarterly, as required. As of a recent quarterly report CARD submitted to ATSDR in March 2022, radiologists have read 4,689 CT scans of which radiologist interpreted 1,537 as abnormal (33%). Exhibit 350, Larson Dec ¶13.

**Response:**   *Undisputed that this is Theodore Larson's Statement.*

61.    ATSDR is aware of, but does not oversee, CARD's completion of Environmental Health Hazards (EHH) Checklists to determine Medicare coverage for individuals exposed to environmental hazards. Exhibit 350, Larson Dec ¶14.

**Response:**   *Undisputed that this is Theodore Larson's Statement.*

62.   ATSDR is aware that CARD fills out EHH Checklists for patients with a positive screening result for asbestos-related disease, as deemed by a CARD physician. Exhibit 350, Larson Dec ¶15.

**Response:**   *Undisputed that this is Theodore Larson's Statement.*

63.   ATSDR is aware that over a thousand individuals clinically diagnosed by CARD with an asbestos related disease and for whom CARD has filled out an EHH Checklist do not have an abnormal CT interpretation by a radiologist. CARD includes this information in its regular quarterly reports to ATSDR. Exhibit 350, Larson Dec ¶16.

**Response:**   *Undisputed that this is Theodore Larson's Statement.*

64.   ATSDR is also aware that CARD has filled out EHH Checklists for hundreds of patients CARD has not clinically diagnosed with an asbestos related disease but based solely on B Reader or radiologist positive interpretations. CARD includes this information in its regular quarterly reports to ATSDR. Exhibit 350, Larson Dec ¶17.

**Response:**   *Undisputed that this is Theodore Larson's Statement.*

65.   The purposes of the ATSDR screening grants are to identify persons with environmental health conditions both through clinical diagnoses by CARD physicians and through B Reader and radiologist interpretations, and to include both categories of persons in Medicare benefits. Exhibit 350, Larson Dec ¶18.

5

**Response:**   *Undisputed that this is Theodore Larson's Statement.*

66.     ATSDR has worked closely with CARD to ensure compliance with the requirements of the ATSDR grants to CARD and ATSDR develops the parameters of the CARD reports to ATSDR. Exhibit 350, Larson Dec ¶19.

**Response:**   *Undisputed that this is Theodore Larson's Statement.*

67.     ATSDR is in regular contact with CARD staff regarding aspects of the ATSDR grant, including compliance and reporting. Exhibit 350, Larson Dec ¶20.

**Response:**   *Undisputed that this is Theodore Larson's Statement.*

68.     ATSDR considers CARD to be in compliance with the terms and purposes of the ATSDR grants. Exhibit 350, Larson Dec ¶21.

**Response:**   *Undisputed that this is Theodore Larson's Statement.*

## BNSF'S ADDITIONAL FACTS IN OPPOSITION TO CARD'S MOTION FOR SUMMARY JUDGMENT

69.     Theodore Larson is not a physician and does not practice medicine. (Doc. 121-3, ¶ 2).

70.     Mr. Larson holds a Bachelor of Science, a Master of Science degree, and serves as a project director within the Agency for Toxic Substances and Disease Registry (ATSDR). (Doc. 121-3, ¶ 3).

71.     Mr. Larson has apparently never been employed by the Social Security Administration (SSA) nor the Centers for Medicare & Medicaid Services. (Doc. 121-3).

72.    No facts establish the circumstances involving CARD's acquisition of the statements included in Mr. Larson's Declaration of September 6, 2022, or whether there were any statements CARD asked Mr. Larson to consider, but were not included in his declaration. (Doc. 121-3).

73.    No facts asserted by CARD establish that Mr. Larson has full knowledge of the scope of the allegations of CARD's fraudulent conduct as set forth in Relator's Third Amended Complaint, nor any of the Undisputed Facts in this matter. (Doc. 121-3; *see also* Docs. 99, 110 & 120).

74.    No facts establish whether Mr. Larson has final decision-making authority regarding CARD's grants from the Centers for Disease Control and Prevention through ATSDR. (Doc. 121-3).

75.    No facts establish that Mr. Larson has any authority to make any decisions on behalf of the SSA related to patient eligibility for Medicare, Pilot Program or Social Security Disability benefits under the Environmental Health Hazards (EHH) provisions of the Affordable Care Act. (Doc. 121-3).

76.    No facts establish that Mr. Larson communicated with CARD about the specific terms of CARD's "diagnostic" practices involving B-read only patients, nor any specific patients' "diagnosis" of asbestos related disease in cases in which CARD considered those patients to be disease free. (Doc. 121-3).

77.     No facts establish that Mr. Larson communicated with CARD or the SSA about what constitutes a "diagnosis" of asbestos-related disease for purposes of determining Medicare eligibility nor whether a patient can, or should, be deemed eligible for Medicare benefits without a diagnosis of asbestos-related disease. (Doc. 121-3).

78.     No facts establish that Mr. Larson has knowledge of SSA Medicare eligibility requirements as set forth in the Program Operations Manual System limiting coverage to "certain individuals exposed to environmental health hazards (EHH) and diagnosed with a medical condition caused by such exposure." (*See* Doc. 80-15 at 1, § A; Doc. 121-3).

79.     No facts establish that Mr. Larson was informed that two of the three thoracic radiologists on CARD's expert B-reader panel (Dr. Meyers and Dr. Kanne) funded by the ATSDR's grant referenced in Mr. Larson's declaration, have notified CARD that they are terminating their B-reader consulting agreements. (Doc. 121-3).

80.     No facts establish any communication between Mr. Larson and anyone at the SSA related to the nine (9) exemplar patients from the cohort of one-hundred and twelve (112) individual patients submitted by CARD for Medicare benefits without a diagnosis. (Doc. 121-3; *see* Doc. 99 at 38, ¶¶139-144 regarding the undisputed facts regarding these nine exemplar patients). In addition, no facts

establish any communication involving Mr. Larson related to the "about 20" patients CARD suggests may have been later diagnosed by CARD after submission for Medicare. (Doc. 128 at 7:17-22; *see also* Doc. 98 at 4; Doc. 72 at 14) [1].

DATED this 29th day of September, 2022.

KNIGHT NICASTRO MACKAY, LLC

By:   */s/ W. Adam Duerk*
        W. Adam Duerk
        *Attorneys for BNSF Railway Company*

---

[1] A close analysis of the factual record shows that CARD's claim that between 20-23 patients who were "initially not diagnosed with an asbestos related disease, but then were diagnosed by CARD in a later subsequent clinic visit" (Doc. 72 at 14) is not supported by CARD's Statement of Undisputed Facts (Doc. 74-33, Ex. 333), nor is there any denial by CARD that these patients were submitted for Medicare benefits at a time when they had not been diagnosed with ARD.

## <u>CERTIFICATE OF SERVICE</u>

I certify on this 29th day of September, 2022, a copy of the foregoing

document was served upon the following persons by the following means:


 1-3          CM/ECF
_____        Mail
_____        Hand Delivery
_____        Overnight Delivery Service
_____        Fax
_____        Email


1.    Clerk, U.S. District Court

2.    Michael Kakuk
      Assistant U.S. Attorney
      U.S. Attorney's Office
      P.O. Box 8329
      105 E. Pine, 2nd Floor
      Missoula, MT 59802
      Michael.kakuk@usdog.gov

3.    Timothy Bechtold
      Bechtold Law Firm, PLLC
      PO Box 7051
      Missoula, MT 59807
      Facsimile: 406-830-3085
      tim@bechtoldlaw.net

                        KNIGHT NICASTRO MACKAY, LLC


                        By:   */s/ W. Adam Duerk*
                              W. Adam Duerk
                              *Attorneys for BNSF Railway Company*