IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BNSF RAILWAY COMPANY, on behalf of THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CENTER FOR ASBESTOS RELATED DISEASE, INC.,<br><br>Defendant. | CV 19–40–M–DLC<br><br>ORDER |

Before the Court are Plaintiff BNSF Railway Company's ("BNSF") First Combined Motions in Limine and Motion to Strike Testimony of Max Baucus (Doc. 85) and Second Combined Motions in Limine (Doc. 108). For the reasons discussed below, BNSF's motions are granted in part, denied in part, and the Court reserves ruling in part.

## BACKGROUND

BNSF brought this *qui tam* action, pursuant to 31 U.S.C. § 3730, alleging that CARD violated the False Claims Act ("FCA"), §§ 3729(a)(1)(A), (B), and (G). (Doc. 66 at 49–54.) BNSF claims that CARD violated the FCA by knowingly presenting or causing to be presented: (1) "false or fraudulent claims for payment or approval to the federal government;" (2) "a false record or statement

1

material to a false or fraudulent claim;" and (3) "false records or statements material to an obligation to pay or transmit money or property to the government." (*Id.*)  BNSF alleges that CARD submitted these false statements through Environmental Health Hazards ("EHH") Medicare Coverage forms to the Social Security Administration, bills to Medicare for opioid and other drug prescriptions, and grant applications and reports to the American Toxic Substances Disease Registry and Centers for Disease Control and Prevention.  (*See id.* at 48–54.)

## DISCUSSION

A motion in limine is a "procedural mechanism" through which questions regarding the admissibility of "testimony or evidence in a particular area" may be resolved before trial.  *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).  Such in limine rulings are preliminary, and the Court "may always change [its] mind during the course of a trial."  *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).  "Evidence shall be excluded in limine only when it is shown that the evidence is inadmissible on all potential grounds.  Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."  *Speaks v. Mazda Motor Corp.*, 118 F. Supp. 3d 1212, 1217 (D. Mont. 2015) (internal quotation marks and citation omitted).

2

**I. First Combined Motions in Limine.**

BNSF's First Combined Motions in Limine (Doc. 85) request that the Court preclude CARD from introducing any evidence, argument, or testimony regarding:

1. The size or financial condition of BNSF, Berkshire Hathaway, Warren Buffet, or BNSF's law firm.

Ruling: GRANTED.  CARD concedes to barring evidence of BNSF's assets and discussion of the size or wealth of BNSF's law firm or Warren Buffet's Berkshire Hathaway.  (Doc. 100 at 1.)

2. Claims of corporate indifference or placing profits over safety.

Ruling: GRANTED.  CARD concedes to barring evidence of "BNSF's practice of putting profits over people."  (*Id.* at 2.)

3. The government's non-intervention decision and absence from Relator's counsel table.

Ruling: GRANTED IN PART; RERSERVE IN PART.  CARD concedes to barring evidence that the government chose not to intervene in this action.  (*Id.*)  However, CARD contends that evidence relating to the fact that "the government conducted investigations of CARD's grants and decided not to bring any punitive acts or sanctions or lawsuits, and in fact chose to supplement and even increase, the grant during the pendency of this lawsuit" is relevant and should be permitted.  (*Id.*)  BNSF replies that the prejudicial effect of such evidence would outweigh any probative value.  (Doc. 105 at 4.)  The Court finds that such evidence may be

relevant to issues in the case, but reserves ruling until trial. *See Speaks*, 118 F. Supp. 3d at 1217.

    4. Referring to BNSF as "Plaintiff."

Ruling: GRANTED. To avoid confusion, the Court will grant BNSF's request to be referred to solely as "Relator" or "BNSF" in front of the jury. The Court asks that the parties submit a joint stipulated preliminary instruction providing a definition for the meaning of "relator" in the context of a *qui tam* action.

    5. Reference to the fact that the FCA provides for treble damages and penalties for each false claim, or that it allows a successful relator to recover reasonable attorney fees, expenses, and costs.

Ruling: GRANTED. CARD specifically concedes to barring evidence of treble damages but fails to address the remaining topics of this motion. (Doc. 100 at 4.) Accordingly, the Court understands CARD's position as conceding to barring all referenced topics.

    6. Testimony from witnesses that were not timely disclosed pursuant to FED. R. CIV. P. 26(a)(1)(A)(i) or identified in response to BNSF's Interrogatory No. 2.

Ruling: GRANTED. The Court will not permit either party from introducing testimony from witnesses who were not timely disclosed under Rule 26(a) or (e) unless the failure was substantially justified or is harmless. FED. R. CIV. P. 37(c)(1).

A party's initial disclosures must include "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of the information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." FED. R. CIV. P. 26(a)(1)(A)(i).  Parties must supplement their Rule 26(a)(1) initial disclosure or response to interrogatories "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e).  In addition to their Rule 26(a)(1) disclosures, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." FED. R. CIV. P. 26(a)(2)(A).  Rule 26(a)(1) governs disclosure of fact or lay witnesses, while Rule 26(a)(2) governs disclosure of expert witnesses. *See, e.g.*, *Karum Holdings LLC v. Lowe's Cos.*, 895 F.3d 944, 951 (7th Cir. 2012) (explaining that "[t]here is a significant distinction between disclosing an individual as a fact witness under Rule 26(a)(1)(A) and disclosing an expert witness under Rule 26(a)(2)").

BNSF specifies in their Reply Brief that they seek to exclude the testimony of Dr. David Yankelevitz on the basis that he was not timely disclosed as a hybrid-expert witness.  (Doc. 105 at 7.)  BNSF argues that CARD failed to disclose Dr.

Yankelevitz in their initial Rule 26(a)(1) disclosure, in response to BNSF's interrogatories, or in their supplemental Rule 26(e) disclosure. (*Id.*) BNSF also argues that Dr. Yankelevitz's unavailability to testify at trial should render his testimony inadmissible. (*Id.* at 8; *see also* Doc. 105-4 at 4.) CARD was not afforded an opportunity to reply to BNSF's arguments regarding Dr. Yankelevitz.

CARD disclosed Dr. Yankelevitz as a hybrid-expert witness in their May 20, 2022, expert disclosures and before the close of discovery. (Doc. 105-4 at 4.) However, Dr. Yankelevitz was not disclosed in CARD's initial or supplemental Rule 26 disclosures. (*See* Docs. 105-1; 105-3.) As a hybrid-expert witness, Dr. Yankelevitz is in part a fact witness, and therefore his disclosure was required in accordance with Rule 26(a)(1) and/or (e). CARD has provided no justification for their exclusion of Dr. Yankelevitz from their Rule 26(a)(1) and (e) disclosures and the failure to timely disclose was not harmless. Accordingly, the Court will not allow CARD to introduce the testimony of Dr. Yankelevitz.

**II. Motion to Strike Testimony of Former-Senator Max Baucus.**

BNSF filed this motion to strike along with their First Combined Motions in Limine. (Doc. 85.) BNSF argues that the affidavit testimony of former-Senator Max Baucus should be excluded because CARD "did not disclose Senator Baucus as a potential witness . . . or identify him as a person with discoverable information." (Doc. 86 at 9.) BNSF also argues that, according to Supreme Court

6

precedent, "CARD cannot use the testimony of one former Senator to show legislative history," and that Mr. Baucus also lacks foundation to testify as to the other drafters' state of mind. (*Id.* at 9–10.) Finally, BNSF argues that such testimony would be more prejudicial than probative. (*Id.* at 11.)

CARD responds that their disclosure of Mr. Baucus occurred prior to the deadline for disclosure of expert witnesses and close of discovery. (Doc. 100 at 4.) CARD also contends that Mr. Baucus will not testify as to the legislative history of the ACA. Rather, he will offer opinions on topics such as "public health, the role of public policy related thereto, the customary efforts of Congresspersons to work cooperatively with . . . other officials on key legislation . . . , and cooperation of public officials to utilize available public resources to address public health issues." (*Id.* at 4–5; *see also* Doc. 105-4 at 3.) CARD concludes that this testimony will be "highly probative of the core issue: CARD's intent relative to the [ACA's] applicability to CARD's work." (Doc. 100 at 8.)

The parties stipulated to a May 20, 2022, deadline for the disclosure of expert witnesses. (*See id.* at 4; Doc. 105 at 9 n.3.) CARD supplemented their initial disclosure to include Mr. Baucus on May 12, 2022. Card also included Mr. Baucus as a hybrid-expert witness in their disclosure of expert witnesses on May 20, 2022. BNSF alleges that CARD could have identified Mr. Baucus as a potential witness in their initial Rule 26(a) disclosure or disclosed him in response

7

to BNSF's relevant interrogatories in September 2021. However, BNSF offers no evidence to support their allegation. Notably, CARD did supplement their Rule 26(a) initial disclosure prior to the close of discovery and before the expert disclosure deadline had passed.[1] Accordingly, the Court does not find that the disclosure was untimely. Nonetheless, to avoid any potential prejudice to BNSF, the Court will allow for BNSF to depose former-Senator Baucus. The Court reserves ruling as to the prejudicial effect and foundation of Mr. Baucus's testimony until the testimony has been offered at trial.

Accordingly, BNSF's Motion to Strike the Testimony of Max Baucus (Doc. 85) is DENIED.

### III. Second Combined Motions in Limine.

In their Second Combined Motions in Limine (Doc. 108), BNSF asks the Court to exclude any reference to:

1. Allegations related to BNSF conduct, character, motives, or alleged liability regarding asbestos exposure or "strict liability" in underlying litigation.

Ruling: GRANTED. BNSF argues that evidence or allegations regarding BNSF's liability for asbestos exposure in Libby is irrelevant, highly prejudicial,

---

[1] This case is distinguishable from *Energy Keepers, Inc. v. Hyperblock LLC*, No. CV 20-76-M-DWM, 2021 U.S. Dist. LEXIS 37276 (D. Mont. Feb. 26, 2021), and *Erickson v. Ford Motor Co.*, No CV-04-88-BU-RFC-CSO, 2007 U.S. Dist. LEXIS 97614 (D. Mont. Nov. 14, 2007)—cited by BNSF—because here the supplement to the initial disclosure was filed before the close of discovery and there is no evidence that the supplemented information was known before the initial disclosure was made.

and unsupported by any holding in a Montana court. (Doc. 109 at 2–3.) BNSF also argues that any testimony as to BNSF's motive or intent in bringing this action would be speculative. (Doc. 109 at 2–3; *see also* Doc. 114 at 3–4.)

CARD argues such evidence is relevant to their defense "that this lawsuit . . . was filed in an effort of BNSF to avoid liability for its negligent conduct in the abnormally dangerous conditions of the contamination of the Libby railyard." (Doc. 111 at 3.) CARD does not rebut BNSF's assertions regarding the lack of any Montana Supreme Court precedent finding BNSF strictly liable for asbestos exposure in Libby. CARD also fails to identify any competent witness who can speak to BNSF's motive in bringing this action.

The Court finds that such evidence should be excluded because it is irrelevant, CARD has not offered a competent witness, and it appears that BNSF has not been found "strictly liable" in underlying litigation. BNSF's motivations for bringing this action do not make it any more or less probable that CARD violated the FCA. *See* FED. R. EVID. 401. Moreover, any testimony from CARD's witnesses as to BNSF's motivations would be speculative, and no BNSF witnesses will appear at trial (*see* Doc. 3 at 11). *See* FED. R. EVID. 701. Finally, CARD has not provided any support for the proposition that BNSF is "strictly liable" for "maintaining an abnormally dangerous condition in downtown Libby resulting in environmental exposure to asbestos." (Doc. 111 at 2.) Rather, the Montana

Supreme Court adopted the common carrier exception to strict liability and held that BNSF is not strictly liable for harm resulting from the transportation of vermiculite or any other activities it undertook pursuant to its duties as a common carrier. *BNSF Ry. Co. v. Asbestos Claims Court*, 459 P.3d 857, 874–75 (Mont. 2020) (explaining that "the rules as to strict liability for abnormally dangerous activities do not apply if the activity is carried on in pursuance of a public duty imposed on the actor . . . as a common carrier").

> 2. Any statements about CARD's financial condition or status as a non-profit.

Ruling: GRANTED IN PART; DENIED IN PART. CARD again concedes to barring evidence of BNSF's assets or other financial information. (Doc. 111 at 5.) However, CARD argues that evidence as to its status as a non-profit entity is highly relevant to "(a) whether CARD has financially benefited from any of the alleged fraudulent EHH claims made, and (b) whether CARD was financially motivated when it submitted EHH forms for patients with positive B-reads." (*Id.* at 5–6.) The Court agrees that evidence of CARD's status as a non-profit entity is relevant for the jury to determine scienter. However, as conceded, CARD will not be permitted to offer evidence of its financial condition relative to BNSF's.

> 3. Any statements which have no basis in fact or law regarding CARD responses to various Statements of Undisputed Facts.

Ruling: DENIED. In response to BNSF's motion, CARD filed a Revised

10

Statement of Disputed Facts (Doc. 110) in which CARD made unqualified admissions to the statements of undisputed fact at issue. (*See* Doc. 114 at 5.) Accordingly, BNSF's motion is denied as moot.

4. Any statements offered by CARD's expert witnesses about Dr. Black, other clinic staff, or CARD itself that amount to character or propensity evidence.

Ruling: GRANTED IN PART. Any statements that amount to character or propensity evidence regarding Dr. Black, other clinic staff, or CARD itself are inadmissible under FED. R. EVID. 404(a) and (b). For instance, statements from Dr. Arthur Frank that "the CARD Clinic and its staff have always been professional, caring, and thoughtful" are inadmissible. (Doc. 109 at 13.) However, CARD is permitted to offer testimony that speaks to Dr. Black's—or other CARD clinic staff's—relevant expertise, qualifications, training, and background. For example, Dr. Albert Miller's testimony that Dr. Black trained as a pediatrician and has years of experience working with various other experts in the field of pulmonology is appropriate to establish Dr. Black's background and qualifications. (Doc. 96-2 at 4.) Additionally, should BNSF open the door to rehabilitative character evidence, then such evidence may be offered.

Accordingly, IT IS ORDERED that BNSF's First Combined Motions in Limine and Motion to Strike (Doc. 85) are GRANTED IN PART, DENIED IN PART, and the Court RESERVES IN PART. Evidence regarding BNSF's assets

and discussion of the size or wealth or BNSF's law firm or Warren Buffet's Berkshire Hathaway is barred. Claims of corporate indifference or placing profits over safety is barred. Evidence that the government chose not to intervene is barred, but the Court reserves ruling on any evidence of government investigations and subsequent grant awards. BNSF is to be referred to solely as "Relator" or "BNSF" in front of the jury, not "Plaintiff." BNSF and CARD are to submit a joint proposed jury instruction defining the term "relator" in the context of a *qui tam* action. Reference to the fact that the FCA provides for treble damages and penalties for each false claim, or that it allows a successful relator to recover reasonable attorneys' fees, expenses, and costs is barred. The testimony of CARD's witness Dr. Yankelevitz, and any other fact or expert witness not timely disclosed under FED. R. CIV. P. 26(a) and (e), is barred. However, the affidavit testimony of former-Senator Max Baucus will be admitted if a proper foundation is laid at trial. BNSF shall be provided an opportunity to depose Mr. Baucus prior to trial.

  IT IS FURTHER ORDERED that BNSF's Second Combined Motions in Limine (Doc. 108) are GRANTED IN PART and DENIED IN PART. Evidence or argument regarding BNSF's conduct, character, motives, or alleged liability regarding asbestos exposure or "strict liability" in underlying litigation is barred. Evidence or argument regarding BNSF's assets or other financial information is

barred; however, CARD may introduce evidence regarding CARD's status as a non-profit organization. BNSF may use CARD's Revised Statement of Disputed Facts (Doc. 110) to impeach statements by CARD witnesses. CARD may not offer testimony that amounts to character or propensity evidence unless BNSF opens the door by attacking a witness's credibility. CARD may offer testimony that establishes an individual's expertise, qualifications, training, and/or relevant background.

    DATED this 30th day of December, 2022.

                                                    _____
                                                    Dana L. Christensen, District Judge
                                                    United States District Court