IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BNSF RAILWAY COMPANY, on behalf of THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>THE CENTER FOR ASBESTOS RELATED DISEASE, INC.,<br><br>Defendant. | CV 19–40–M–DLC<br><br><br>ORDER |

Before the Court is the United States' Motion to Quash Subpoena to Social Security Administration (Doc. 141) and Motion to Quash Subpoena to Agency for Toxic Substances and Disease Registry (Doc. 143). For the following reasons, the Court denies the motions.

**Background**

BNSF Railway Company ("BNSF") brought this *qui tam* action, pursuant to 31 U.S.C. § 3730, alleging that the Center for Asbestos Related Disease ("CARD") violated the False Claims Act.[1] (Doc. 66 at 49–54.) BNSF's first Complaint was filed in March 2019. (*See* Doc. 1.) Since that time, the parties have engaged in

---

[1] As realtor in the *qui tam* action, BNSF is standing in the shoes of the United States after the United States declined to intervene.

1

diligent discovery and extensive pretrial motions practice, including the filing of numerous motions in limine and cross-motions for summary judgment. (*See* Docs. 71, 78, 85, 108.) The Court has resolved these motions, and the matter is set for a jury trial beginning on June 12, 2023, and anticipated to last several weeks. (*See* Docs. 131, 132.) Now before the Court are the United States' motions to quash, brought on behalf of the Social Security Administration ("SSA") and the Agency for Toxic Substances and Disease Registry ("ATSDR"), pursuant to FED. R. CIV. P. 45.

On September 14, November 14, and December 16, 2022, CARD sent *Touhy* requests to the SSA to obtain testimony from the agency regarding core issues in this matter.[2] (Doc. 134 at 2.) The SSA denied the requests via writing on January 6, 2023. (Doc. 134-1.) CARD also sent a *Touhy* request to the ATSDR on May 23, 2022. (Doc. 134 at 2.) In response, the ATSDR provided the declaration of Theodore Larson, an epidemiologist and project officer with the agency (the "Larson Declaration"). (Doc. 121-3 at 2.) CARD then sent additional *Touhy* requests on September 22 and December 16, 2022. (Doc. 134 at 2.) In response, the ATSDR provided a letter from Rochelle Walensky, Director of the CDC and Administrator of the ATSDR, denying the requests. (Doc. 144-1.)

---

[2] A *Touhy* request seeks official information for litigation purposes, including witnesses and documents, when the Government is not a party to the litigation. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951).

After the agencies declined CARD's *Touhy* requests, the parties jointly moved to compel the agencies to respond to subpoenas for trial testimony issued by CARD. (*See* Docs. 134, 134-2, 134-3.) The Court granted the motion on February 14, 2023, after finding the requested information necessary to resolve material issues of disputed fact in this matter and that the subpoenas would not pose an undue burden. (*See* Doc. 135.) On March 1, the United States, on behalf of the agencies, sought leave to file a motion for reconsideration of this Court's order. (*See* Doc. 136.) The Court denied the motion but explained that the non-party agencies could instead move to quash the relevant subpoenas after meeting and conferring with the parties to attempt to resolve any disputes. (Doc. 140 at 3.)

The United States and the parties report that they were unable to entirely resolve their disputes. (Docs. 142 at 2; 144 at 2.) However, the ATSDR has apparently agreed to make Mr. Larson available for deposition on May 9, 2023, in Atlanta, Georgia. (Doc. 147 at 2.) Additionally, the SSA has provided the declaration of Heather Hillmann, Medicare Lead and Subject Matter Expert in the Denver Regional Office of the SSA (the "Hillmann Declaration"). (Doc. 142-1.) In this declaration, Ms. Hillmann addresses some of the subpoena matters, such as whether SSA personnel conducted a training for CARD or instructed CARD on how to complete SSA's EHH Checklist. (*Id.* at 2.) However, the declaration does not address all forty-four matters found in the SSA Subpoena. Despite these

efforts to reach a resolution of this discovery dispute, the United States has moved to quash the subpoenas.

## Discussion

Rule 45 permits parties to subpoena documents from non-parties, including government agencies. *See generally* FED. R. CIV. P. 45; *see also United States v. United States ex rel. Thrower*, 968 F.3d 996, 1006 (9th Cir. 2020) ("As a third party, the Government and its agencies are subject to the same discovery obligations as other non-parties under Federal Rule of Civil Procedure 45, including the obligation to respond to subpoenas for documents and testimony." (citations omitted)). But there are limits.

A non-party subpoena cannot impose an *undue burden* or expense. FED. R. CIV. P. 45(d)(1) (emphasis added). It also must "allow a reasonable time to comply" and avoid requiring the "disclosure of privileged or other protected matter." FED. R. CIV. P. 45(d)(3)(A)(i), (iii)–(iv). If a Rule 45 subpoena runs afoul of these limitations it must be modified or quashed. *Id.* It is the burden of the movant to demonstrate that a subpoena should be modified or quashed. *See Brown v. Sperber-Porter*, No. CV-16-02801-PHX-SRB, 2017 U.S. Dist. LEXIS 223061, 2017 WL 10409840, at *3 (D. Ariz. Nov. 6, 2017) (citing *Rocky Mountain Med. Mgmt., LLC v. LHP Hosp. Group, Inc.*, No. 4:13-cv-00064-EJL, 2013 U.S. Dist. LEXIS 175590, 2013 WL 6446704, at *2 (D. Idaho Dec. 9, 2013)).

### I.   SSA Subpoena

The SSA Subpoena requests that the agency provide trial testimony on forty-four matters, including: the SSA's Program Operations Manual System; the agency's understanding of the term "diagnosis" and "qualified physicians" in relation to EHH Coverage and eligibility criteria for EHH Coverage; the identity of SSA staff involved in training CARD staff; the SSA's method for filling out the EHH Coverage form; what SSA knew about CARD's methodology with respect to EHH Coverage; and various other topics involving EHH Coverage and what the SSA knew or did not know with regard to the CARD Clinic.  (*See* Doc. 134-2 at 3–19.)

The United States contends that the Court cannot compel the agency to disclose the requested information and that the subpoena is unduly burdensome. (Doc. 142 at 4.)  The parties respond that the question of "whether a federal court is empowered to compel discovery from a federal agency" is no longer before the Court.  (Doc. 145 at 5.)  Regarding undue burden, the parties respond that the United States has failed to make the requisite "strong showing."  (*Id.* at 5–8.) Finally, the parties argue that the Hillmann Declaration is not admissible evidence at trial, and it is therefore necessary for the SSA to provide trial testimony.  (*Id.* at 8–9.)

Disclosure of information held by the SSA is governed by 42 U.S.C. § 1306,

which "provides that information in the possession of [the] SSA shall not be disclosed except as the Commissioner [of the SSA] proscribes by regulation" or otherwise provided by Federal law. *Reeves v. Barnhart*, 125 Fed. Appx. 120, 122 (9th Cir. 2005); 42 U.S.C. § 1306. Pursuant to Section 1306, the Commissioner has promulgated regulations which limit the disclosure of information. "An SSA employee can testify concerning any function of SSA or any information or record created or acquired by SSA as a result of the discharge of its official duties in any legal proceeding . . . *only with prior authorization of the Commissioner*" and "only to the extent that doing so is consistent with 20 CFR parts 401 and 402." 20 C.F.R. § 403.100. Where a court of competent jurisdiction has ordered the SSA to disclose certain information, the agency will comply if:

(1) another section of this part specifically allows such disclosure, or
(2) SSA, the Commissioner of Social Security, or any officer or employee of SSA in his or her official capacity is properly a party in the proceeding, or
(3) disclosure of the information is necessary to ensure that an individual who is accused of criminal activity receives due process of law in a criminal proceeding under the jurisdiction of the judicial branch of the Federal government.

*Id.* § 401.180(e). The SSA may also comply with the court order "[i]n other circumstances . . . [after] "balancing the needs of a court while preserving the confidentiality of information . . . [and] in accordance with § 401.140." *Id.* § 401.180(f).

The United States argues that, pursuant to these regulations, this Court

had no authority to compel the disclosure of the requested information. (Doc. 142 at 4.) However, the regulations clearly contemplate that a court of competent jurisdiction may order the disclosure of agency held information and, under certain circumstances, the agency will comply. *See* 20 C.F.R. §§ 403.100, 401.180. Where the Court *may* be limited is in compelling the disclosure of information *after* the Commissioner has declined a court's order. *See Mason v. South Bend Comm. Sch. Corp.*, 990 F. Supp. 1096, 1097 (N.D. In. 1997) (declining to find agency in contempt for failing to comply with the court's order to procure certain documents). However, that question is not squarely before the Court. The only question before the Court is whether the subpoenas place an undue burden on the agency.

On this question, the United States argues that the requests are overbroad and/or have already been answered to the best of the agency's ability in the Hillmann declaration. The Court recognizes that Rule 45 is a mechanism through which "the Government can vindicate its 'serious and legitimate' interest in ensuring 'that its employee resources are not commandeered into service by private litigants to the detriment of the smooth functioning of government operations.'" *United States ex rel. Thrower*, 968 F.3d at 1006 (citing *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d 774 (9th Cir. 1994) (cleaned up). However, the Court is unconvinced by the

United States' arguments.

First, in response to CARD's subpoena and this Court's order, the SSA has provided the Hillmann Declaration. As the United States explains, the SSA "understands that additional information from the agency may be necessary to address some of the claims at issue" and the "SSA prepared the attached [Hillmann] [D]eclaration to address those concerns." (Doc. 142 at 6.) Although the Hillmann Declaration does not address every matter raised in the subpoena, it does address several key issues and demonstrates that the agency can provide answers, even if they are not conclusory. The United States argues that a deponent is not necessary to admit these responses into evidence, (Doc. 146 at 3); however, the Court is unaware of any other means through which the statements contained in the *unsworn* Hillman Declaration could be admitted at trial and the United States advances none. *See* 28 U.S.C. § 1746; FED. R. EVID. 802.

As to those issues not addressed in the Hillman declaration, the Court acknowledges that agency is in the best position to determine what resources are available and what information it can provide. However, it does not follow that the agency is incapable of providing any response whatsoever to these questions. For instance, the SSA argues that "[r]equests 19 through 22 ask if the steps outlined in the requests meet SSA's 'method' for filling out an EHH

8

form" but because the SSA "does not have a method for filling out the form . . . no deponent would provide additional information on this topic." (Doc. 142 at 9.)  Similarly, on some matters, the SSA simply states that it will not take a position. (*See id.* at 10.)  The Court believes that even these answers are sufficiently useful to help resolve this dispute and a deponent could testify to these statements.

      The Court emphasizes the necessity and significance of the requested information.  The forty-four matters that are the subject of the SSA Subpoena are highly relevant to material issues of disputed fact in this matter.  The SSA is the only source of answers to these questions because the questions focus on what the SSA knew or understood at relevant times.  The Court understands that the SSA wishes to avoid the unnecessary diversion of resources, but to that point, the Court notes that the agency has already dedicated significant resources to responding to the parties' requests for information.  Any additional time or resources spent in providing deposition testimony would likely be negligible, and the balance of interests strongly favors allocating resources to this end.  As discussed below, the ATSDR appears to be more willing to work with the parties to provide the requested information by cooperating and scheduling the deposition of Mr. Larson.  The Court urges the SSA to do the same.

Accordingly, the Court concludes that the SSA has failed to demonstrate that the SSA Subpoena poses an undue burden.

## II. ATSDR Subpoena

The ATSDR Subpoena contains thirteen matters of examination, including: the "terms and purposes of the ATSDR screening grants to CARD;" information on CARD's compliance with the grants; the agency's knowledge of diagnostic methods, Medicare qualifications, and CARD's diagnostic rates; why ATSDR provided supplemental grant funding to CARD in light of ongoing litigation; and testimony regarding "each of the statements in the" Larson Declaration. (Doc. 134-3.)

The United States argues that the ATSDR Subpoena is unduly burdensome because (1) most of the requests have already been answered by the Larson Declaration, and (2) the agency has no information to provide on the remaining requests. (Doc. 144 at 3, 4, 7.) The parties respond that "the government has not made the required 'strong showing' that it cannot comply with the subpoena" and that "the declaration itself is not admissible as evidence at trial in this matter," and therefore, practical considerations favor denying the motion to quash. (Doc. 147 at 4–5.)

The Court is unconvinced by the United States' argument that providing a deponent to testify to the matters addressed in Larson Declaration is so

10

burdensome as to warrant quashing the subpoena. Moreover, the ATSDR has agreed to allow Mr. Larson to be deposed in this matter, and the Court commends the agency's willingness to cooperate with the parties. (Doc. 147 at 2.)

The matters addressed in the ATSDR Subpoena are highly relevant to material issues of disputed fact in this case, are not available from any other sources, and are inadmissible at trial unless introduced through trial testimony. The Court recognizes that the agency seeks to prevent the unnecessary diversion of its resources; however, the agency has already dedicated its time and resources toward providing responses to the parties' questions. To now prohibit the parties from introducing such evidence at trial by preventing the parties from deposing Mr. Larson on those matters would be a waste of these efforts. The balance of interests strongly favors allowing Mr. Larson to be deposed on the matters contained in the ATSDR Subpoena. To the extent Mr. Larson is unable to provide answers to any of the matters contained in the ATSDR subpoena, Mr. Larson can simply testify to that effect.

Accordingly, IT IS ORDERED that the Motion to Quash Subpoena to Social Security Administration (Doc. 141) is DENIED in full.

IT IS FURTHER ORDERED that the Motion to Quash Subpoena to Agency for Toxic Substances and Disease Registry (Doc. 143) is DENIED in full.

DATED this 8th day of May, 2023.

11

Dana L. Christensen, District Judge
United States District Court