IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BNSF RAILWAY COMPANY,<br>on behalf of THE UNITED STATES<br>OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>CENTER FOR ASBESTOS RELATED<br>DISEASE, INC.,<br><br>    Defendant. | CV 19–40–M–DLC<br><br>ORDER |

Before the Court is Defendant Center for Asbestos Related Disease, Inc.'s ("CARD") Offer of Proof. (Doc. 188.) CARD requests that this Court reconsider its ruling on the admissibility of U.S. Senator Max Baucus's trial perpetuation deposition testimony in this matter. (*Id.* at 1.) For the reasons discussed below, the Court denies CARD's request.

### BACKGROUND

Plaintiff BNSF Railway Company ("BNSF") first moved to strike Senator Baucus's testimony on the basis that it was improperly disclosed, insufficient to show legislative history, and more prejudicial than probative. (Doc. 85 at 9–11.) CARD explained that Senator Baucus would offer opinions on "public health, the role of public policy related thereto, the customary efforts of Congresspersons to

1

work cooperatively with . . . other officials on key legislation . . . , and cooperation of public officials to utilize available public resources to address public health issues," which is "highly probative of the core issue: CARD's intent relative to the [ACA's] applicability to CARD's work." (Doc. 100 at 4–5, 8.) The Court denied the motion to strike but allowed BNSF to depose Senator Baucus and reserved ruling on the admissibility of the testimony at trial. (Doc. 132 at 8.)

On the first day of trial, after reviewing the transcripts of Senator Baucus's depositions, the Court excluded the testimony of Senator Baucus, in its entirety. The Court explained that Senator Baucus's opinion on what constitutes a diagnosis for asbestos related disease under the Affordable Care Act ("ACA") lacked foundation, is more prejudicial than probative, and invades the province of the Court to determine, as a matter of law, what constitutes a diagnosis in this case.

CARD has now filed an Offer of Proof, again seeking to admit Senator Baucus's trial perpetuation deposition testimony.

## DISCUSSION

Under the False Claims Act ("FCA"), BNSF must prove by a preponderance of the evidence that CARD acted "knowingly" when it presented, or caused to be presented, materially false claims for payment. *See* 31 U.S.C. § 3729(a)(1)(A); *see also Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 187 (2016). The statute defines "knowingly" as acting with (1) actual knowledge

of the truth or falsity of the information; (2) deliberate ignorance of the truth or falsity of the information; or (3) reckless disregard of the truth or falsity of the information.  31 U.S.C. § 3729(b)(1).  Innocent mistake or mere negligence do not suffice.  *United States ex rel. Hagood v. Sonoma Cty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991).  Moreover, the scienter requirement "refers to [the defendant's] knowledge and subjective beliefs—not what an objectively reasonable person may have known or believed."  *United States ex rel. Schutte v. SuperValu Inc.*, 143 S. Ct. 1391, 1399 (2023).  Thus, a defendant who relies on "a good faith interpretation of a regulation is not subject to liability" under the FCA, even if that interpretation is objectively unreasonable.  *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 464 (9th Cir. 1999).

CARD argues that "Senator Baucus's testimony is directly relevant and probative" of whether CARD acted knowingly because "[t]he evidence goes directly to CARD's 'good faith interpretation' of the [ACA]."  (Doc. 188 at 2.)  CARD claims that Senator Baucus and his staff worked closely with CARD personnel when drafting provisions of the ACA, now codified under 42 U.S.C. § 1395rr-1 ("EHH Medicare"), related to individuals in and around Libby, Montana, who have been diagnosed with an asbestos related disease.  (*Id.*)  CARD also claims that, because of those conversations, the ACA was drafted "so that individuals affected by asbestos in Libby would qualify for Medicare if a B-reader

3

interpreted evidence of disease in a chest x-ray or if qualified outside readers or the CARD Clinic determined an individual had an asbestos related disease after review of a CT scan." (*Id.*)

CARD's characterization of Senator Baucus's testimony is not consistent with the testimony itself and the proffered testimony is not relevant to CARD's scienter. Senator Baucus stated he "spent a lot of time in Libby, [and] visited Libby many, many times on [the] issue [of asbestos related disease in Libby]," (Doc. 188-2 at 8:13–14), and has "had an infinite number of conversations with Dr. Black with many people in Libby with many government officials [sic]," (Doc. 188-1 at 12:12–14). Senator Baucus also testified that it was his intent to allow "various ways" for an individual to qualify for EHH Medicare, and that he "meant the statute to be read in an inclusive way," such that "not only a diagnosis determined by the CARD clinic, but also if a B Reader were to find a positive indication of asbestos-related disease, that would be enough to allow that person to be covered under Medicare." (Doc. 188-2 at 20:4, 23:12–16.) However, Senator Baucus did not testify that he discussed the language of the EHH Medicare provision with CARD or any CARD personnel, nor did he testify that he instructed CARD that it was acceptable to submit patients for EHH Medicare based on a B-Read alone without an actual diagnosis. Thus, there is not a sufficient basis to connect Senator Baucus's statements to the question of whether CARD acted under

a good faith interpretation of the statute.

Additionally, as this Court explained in its initial ruling from the bench on this issue, Senator Baucus's opinion on what constitutes a diagnosis for asbestos related disease under the ACA lacks foundation, is more prejudicial than probative, and invades the province of the Court to determine issues of law.  Thus, even assuming, *arguendo*, that Senator Baucus's testimony is relevant to CARD's scienter under the FCA, the testimony is inadmissible for these reasons.

The Court has ordered that no mention of Senator Baucus be made in order to avoid reversible error.  Having now reviewed CARD's Offer of Proof, the Court can envision that some testimony regarding CARD's involvement with Senator Baucus's staff or Senator Baucus himself may be admissible.  For example, during trial on Friday, June 23, one of CARD's witnesses offered testimony regarding conversations she had with the state delegation involved in drafting the relevant statutory language.  The Court will allow voir dire of future witnesses in order to determine which evidence will be allowed, consistent with this order.  Under no circumstances will witnesses offer hearsay statements or testimony otherwise inadmissible under the Federal Rules of Evidence.

Accordingly, IT IS ORDERED that CARD's Offer of Proof (Doc. 188) is DENIED.  The proffered trial perpetuation deposition testimony of Senator Max Baucus may not be admitted.

DATED this 25th day of June, 2023.

_____
Dana L. Christensen, District Judge
United States District Court