IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BNSF RAILWAY COMPANY, on behalf of THE UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>CENTER FOR ASBESTOS RELATED DISEASE, INC.,<br><br>    Defendant. | CV 19–40–M–DLC<br><br><br><br>ORDER |

    Before the Court are the parties' briefs regarding damages and penalties to be imposed against Defendant Center for Asbestos Related Disease, Inc., ("CARD") under the False Claims Act. (Docs. 224, 225.) Having read and considered the briefs filed by the parties, the Court amends the judgment in this matter to award the United States $3,243,795.00 in damages, impose $2,582,228.00 in penalties, and award Relator BNSF Railway Co. ("BNSF") 25% of the total proceeds of the action. BNSF's attorneys' fees and costs will be addressed through a later order once the issue has been fully submitted.

**BACKGROUND**

    BNSF brought this *qui tam* action, pursuant to 31 U.S.C. § 3730, alleging

1

that CARD violated the False Claims Act ("FCA"), § 3729(a)(1)(A), (B), and (G). (Doc. 66 at 49–54.)  BNSF claimed that CARD violated the FCA by knowingly presenting or causing to be presented: (1) "false or fraudulent claims for payment or approval to the federal government;" (2) "a false record or statement material to a false or fraudulent claim;" and (3) "false records or statements material to an obligation to pay or transmit money or property to the government."  (*Id.*)  Specifically, BNSF alleged that CARD submitted false claims and statements through Environmental Health Hazards ("EHH") Medicare Coverage forms to the Social Security Administration, bills to Medicare for opioid and other drug prescriptions, and grant applications and reports to the American Toxic Substances Disease Registry and Centers for Disease Control and Prevention.  (*See id.* at 48–54.)

     A jury trial commenced on June 12, 2023, and on June 28 the jury found that CARD had committed a total of 337 violations of the FCA—246 violations occurring before November 2, 2015, and 91 occurring after November 2, 2015— and awarded the United States $1,081,265.00 in damages.  (Doc. 216.)  Following the verdict, the Court ordered the parties to submit supplemental briefing on the issue of the total damages and penalties to be awarded under the FCA.  (*See* Doc. 214.)  This issue is now fully briefed and before the Court.

2

**DISCUSSION**

First, the Court will address the statutory damages and penalty to be imposed pursuant to the FCA. The Court will then address whether the damages and penalty imposed violate the Eighth Amendment's Excessive Fines Clause.

**I.      Statutory Damages and Penalties.**

The FCA provides that a person who violates the Act "is liable to the United States Government for a civil penalty . . . plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1). The Act provides the Court with limited discretion to determine the amount of the penalty to be imposed, adjusted in accordance with the Federal Civil Penalties Inflation Adjustment Act of 1990. *Id.* For violations that occurred between September 29, 1999, and November 2, 2015, the Court may impose a civil penalty between $5,500 and $11,000 for each violation. 28 C.F.R. § 85.3(a)(9). For violations that occurred after November 2, 2015, the Court may impose a civil penalty between $13,508 and $27,018 for each violation. *Id.* § 85.5(a), (d). The FCA also awards a *qui tam* relator "an amount which the court decides is reasonable for collecting the civil penalty and damages . . . not less than 25 percent and not more than 30 percent of the proceeds of the action," which "shall be paid out of such proceeds." 31 U.S.C. § 3730(d)(2).

Here, the jury awarded the United States Government $1,081,265.00 in

damages for 337 violations of the FCA.  Trebling these damages results in a total damages award of $3,243,795.00.  Applying the minimum and maximum penalties provided under the Act for the 337 violations—246 violations occurring before November 2, 2015, and 91 occurring after November 2, 2015—results in a penalty range between $2,582,228.00 and $5,164,638.00.[1]  BNSF defers to the Court's discretion as to the appropriate penalties within this range but urges the Court to impose the maximum end of the range.  (Doc. 224 at 4.)  CARD argues that no fines or additional damages should be imposed.  (Doc. 225 at 16.)  BNSF also requests that it be awarded 25% of the total proceeds, which is the minimum percentage allowable under the Act.  (Doc. 224 at 6.)

The Court finds that a penalty at the low end of the statutory range of $2,582,228.00 is sufficient to achieve the aims of the FCA.  Specifically, the Court is satisfied that this penalty will deter future wrongdoing and reflects the seriousness of the offense.  Accordingly, the judgement will be amended to reflect that CARD is liable to the United States Government for $3,243,795.00 in damages and $2,582,228.00 in penalties, for a total of $5,826,023.00.  BNSF is entitled to 25% of the total proceeds.

---

[1] Penalties for violations *between September 29,1999, and November 2, 2015*:
  Minimum: $5,500 x 246 = $1,353,000.00
  Maximum: $11,000 x 246 = $2,706,000.00
 Penalties for violations *after November 2, 2015*:
  Minimum: $13,508 x 91 = $1,229,228.00
  Maximum: $27,018 x 91 = $2,458,638.00

## II. Excessive Fines Clause.

"An award of treble damages and civil penalties under the FCA is, at least in part, punitive and subject to the Eighth Amendment's Excessive Fines Clause."[2] *United States v. Bourseau*, 531 F.3d 1159, 1173 (9th Cir. 2008); *see also United States v. Mackby*, 261 F.3d 821, 829–31 (9th Cir. 2001) [hereinafter *Mackby I*] (holding that "the FCA's treble damages provisions, at least in combination with the Act's statutory penalty provision, is not solely remedial and therefore is subject to an Excessive Fines Clause analysis under the Eight Amendment."). Under the Excessive Fines Clause, "[i]f the amount of the [fine] is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." *United States v. Bajakajian*, 524 U.S. 336, 337 (1998).

Though there is no rigid set of factors to consider when deciding whether a fine violates the Excessive Fines Clause, the Ninth Circuit has recognized the

---

[2] The Ninth Circuit has determined that the imposition of treble damages and civil penalties is in part punitive and in part remedial but has declined to determine precisely what portion of either component of the judgment is remedial versus punitive. However, the Fourth Circuit has gone further in its analysis of this issue. *See United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 389 (4th Cir. 2015). In that case, the court determined that the entire penalty was punitive, but the actual damages award and the portion of the trebled damages award that was allocated to the relator was remedial. *Id.* In that case, the Fourth Circuit also recognized the Supreme Court's suggestion in *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003), that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety" may apply to FCA damages and penalties. *Id.* The Ninth Circuit has not applied the limit from *State Farm* in the context of FCA damages and penalties. Nonetheless, applying the Fourth Circuit's analysis to this case, the punitive portion of the total proceeds awarded is below the *State Farm* threshold. The remedial portion of the total proceeds is the sum of the jury's original damages award, $1,081,265.00, and the portion of the trebled damages that will go to relator, $810,948.75 (25% of trebled damages). The punitive portion of the total proceeds is the sum of the penalty, $2,582,228.00, and the portion of the trebled damages award that remains after subtracting the relator's share and the original damages award. Thus, the punitive portion of the total proceeds is $3,933,809.25, which is less than four times the compensatory damages award, or $4,325,060.00

5

following factors as relevant in the context of an FCA action: "(1) the severity of the offense and its relation to other criminal activity; (2) the maximum penalty faced; (3) the harm caused[;] and (4) whether the defendant falls within the class of persons targeted by the applicable law." *Bourseau*, 531 F.3d at 1173; *see also United States v. Mackby*, 339 F.3d 1013, 1016–17 (9th Cir. 2003) [hereinafter *Mackby II*]. Other relevant factors may include a defendant's ability to pay, whether the penalty imposed is necessary to achieve the desired deterrence, and the sanctions imposed in other cases for comparable conduct. *See Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 435 (2001); *Mackby I,* 261 F.2d at 830; *United States v. Aleff*, 772 F.3d 508, 511 (8th Cir. 2014); *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1314–16 (11th Cir. 2021); *Drakeford*, 792 F.3d at 388–89. The penalties available under the FCA are instructive in this analysis, though not dispositive. *Mackby II*, 339 F.3d at 1017. Having assessed the relevant factors, the Court concludes that the damages and penalties imposed in this case do not violate the Excessive Fines Clause.

      **A.**    **Relation to Other Criminal Activity.**

The first factor requires the Court to consider whether the misconduct at issue is related to any other illegal activities. This factor is not particularly relevant here, as compared to criminal contexts, and does not aid in the Court's analysis.

6

## B. Maximum Penalties Available.

There is a presumption that a penalty within the statutory range is constitutional. *See Bajakajian*, 524 U.S. at 336 ("[J]udgments about the appropriate punishment for an offense belong in the first instance to the legislature."); *see also Ellis v. Zheng*, 799 Fed. Appx. 551 (9th Cir. Apr. 3, 2020) (stating that the court has "never found an FCA penalty within the range permitted by Congress to violate the Excessive Fines Clause."). As discussed above, the Court elected to impose penalties at the low end of the statutory range for all 337 violations. The difference between the minimum and maximum penalty in this case is $2,582,410.00, which supports a finding that the judgment is not excessive. *See Mackby II*, 339 F.3d at 1018 (noting that the substantial difference between the actual judgment and the maximum available judgment weighs in favor of upholding the judgment). The Court also notes that the Ninth Circuit has upheld the imposition of treble damages and civil penalties at the *maximum* end of the statutory range in the FCA context. *Bourseau*, 531 F.3d at 1173 (explaining that the court "found no law requiring a district court to award less than treble damages and the maximum amount of allowable civil penalties in an FCA case in order to satisfy the Excessive Fines Clause" and further stating that "[t]he FCA, itself, instructs the district court to treble damages and provides the district court with limited discretion in calculating civil penalties"). Thus, this factor strongly favors

a finding of constitutionality.

## C. Extent of the Harm Caused and Level of Culpability.

As the Ninth Circuit has recognized, the fact "Congress provided for treble damages and an automatic monetary penalty per false claim shows that Congress believed making a false claim to the government is serious offense." *Mackby II*, 339 F.3d at 1017–18.  "The Government has a strong interest in preventing fraud, and the harm of such false claims extends beyond the money paid out of the treasury." *Id.* at 1019.

Particularly relevant in this case, "[f]raudulent claims make the administration of Medicare more difficult, and wide-spread fraud would undermine public confidence in the system." *Id.*  Evidence presented at trial spoke directly to this concern, with one pharmacist from the Libby area testifying that the running joke around town was that an individual could qualify for lifetime Medicare benefits by going to the CARD Clinic and coughing.  Similarly concerning is the breadth of the harm that occurred, with over one million dollars in actual damages tied to the administration of Medicare; and, in reality, the damages were potentially far greater, but the difficulty in proving and calculating the total damages resulted in BNSF producing evidence on the average cost per violation, rather than an exact dollar figure.

Regarding culpability, the FCA requires a showing that a defendant acted

"knowingly." 31 U.S.C. § 3729(a)(1). Although CARD continues to argue that it acted in good faith, and therefore, lacked the requisite mental state, (Doc. 225 at 8–12), that issue has already been decided by the jury. Thus, CARD's culpability and the extent of the harm caused support the constitutionality of the damages and penalties imposed.

### D. Class of Persons Targeted by the FCA.

CARD is squarely in the class of defendants at whom the FCA is principally directed—those who knowingly defraud the United States Government through false claims or statements.

### E. Need for Deterrence.

Of particular importance to the Court is the need to deter future misconduct by CARD and others who may engage in similar conduct. Substantial penalties are effective in dissuading fraudulent misconduct. Despite the evidence elicited in the course of this trial, and this Court's ruling as to the what constitutes a "diagnosis" under the EHH Medicare provisions, the Court heard testimony from CARD's current director, Dr. Karen Lee Morrissette, that the clinic intends to continue operating in the same manner that it had been leading up to this lawsuit.

Other evidence elicited at trial also raises concerns about future fraud or misconduct. In particular, the Court is concerned by testimony that Dr. Brad Black, former director of the CARD Clinic, diagnosed himself with an asbestos

9

related disease and had Nurse Michelle Boltz sign his EHH Medicare checklist form; testimony that Nurse Michelle Boltz signed the form to submit her own mother for EHH Medicare; and evidence regarding alarmingly high rates of opiate prescriptions from the CARD clinic for people who may or may not have had a legitimate diagnosis of an asbestosis related disease.  While these acts may not have constituted any of the 337 FCA violations found by the jury, they do demonstrate, in this Court's opinion, a reckless disregard for proper medical procedure and the legal requirements of government programs.

Accordingly, the Court finds that the need for a significant deterrent effect warrants the imposition of significant penalties and treble damages.

### F.     CARD's Ability to Pay.

CARD urges this Court to take into consideration its ability to pay and its status as a non-profit entity dependent on government funding to support its operations.  (Doc. 225 at 14–16.)  The Court acknowledges that CARD fills an important role in Libby, Montana, and the surrounding area as a health-care provider.  The Court also acknowledges that CARD is a non-profit and is, at least in part, funded by federal government grants.[3]  However, CARD's status as a non-profit does not provide the Court sufficient information to determine CARD's ability to pay the damages and penalties imposed here.

---

[3] Evidence was introduced at trial that CARD also received donations from private individuals and entities.

Moreover, the Court cannot simply disregard the factors discussed above and give CARD's financial status undue weight in this analysis. The FCA is the United States Government's "primary litigative tool for combatting fraud against it and is intended to reach all fraudulent attempts to cause the Government to pay." *Yates*, 21 F.4th at 1315 (cleaned up). And, as discussed above, CARD falls squarely in the FCA's crosshairs. The FCA does not carve out exceptions on the basis of the offender's corporate form, and the Court does not find it appropriate to do so.

CARD's argument that the penalty should somehow be reduced on the basis that the jury did not find CARD liable for all alleged violations, (Doc. 225 at 15–16), finds no support in the law. CARD appears to conflate the analysis employed in calculating attorneys' fees and costs with the imposition of damages and penalties under the FCA.

Accordingly, CARD's ability to pay and status as a non-profit do not support a finding that the damages and penalties imposed here are excessive under the Eighth Amendment.

## Conclusion

For the foregoing reasons, the Court finds that the jury's damages award must be trebled, resulting in a total damages award of $3,243,795.00 for the United States Government. Penalties at the low end of the statutory range will be imposed

for all 337 FCA violations, resulting in a total penalty of $2,582,228.00. Therefore, the United States Government is entitled to total proceeds of $5,826,023.00, and BNSF, as relator, is entitled to 25% of the total proceeds. The damages and penalties are not excessive under the Eighth Amendment in light of CARD's culpability, the extent of the harm done, the need for deterrence, and the FCA's statutory direction on damages and penalties.

Accordingly, IT IS ORDERED that the judgment in this matter is amended to reflect a total damages award of $3,243,795.00 for the United States Government and the imposition of $2,582,228.00 in penalties for the 337 FCA violations found by the jury.

IT IS FURTHER ORDERED that BNSF, as relator, is entitled to 25% of the total proceeds.

IT IS FURTHER ORDERED that BNSF's request for attorneys' fees and costs will be resolved by separate order once that issue has been fully briefed and submitted to the Court.

DATED this 18th day of July, 2023.

_____
Dana L. Christensen, District Judge
United States District Court