Chad M. Knight
James E. Roberts
W. Adam Duerk
Seamus Molloy
KNIGHT NICASTRO MACKAY, LLC
283 W. Front Street, Suite 203
Missoula, Montana 59802
Telephone:  (406) 206-7052
Facsimile: (816) 396-6233
knight@knightnicastro.com
roberts@knightnicastro.com
duerk@knightnicastro.com
molloy@knightnicastro.com
    *Attorneys for BNSF Railway Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| BNSF RAILWAY COMPANY, on behalf of THE UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>THE CENTER FOR ASBESTOS RELATED DISEASE, INC.,<br><br>Defendant. | Civil Action No.: CV-19-40-M-DLC<br><br><br>**RELATOR'S REPLY BRIEF IN SUPPORT OF MOTION FOR FEES AND COSTS** |

COMES NOW, Relator, BNSF Railway Company ("BNSF"), through counsel, and submits this reply brief in support of its Motion for Fees and Costs (Doc. 239).

1

# ARGUMENT

**A.     Relator's fees are "Reasonable" and supported by adequate documentation, despite CARD's argument to the contrary.**

CARD cites one case, *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484-85 (9th Cir. 1988), to stand for the proposition that "inadequate documentation" can result in the reduction of attorney fees.  But a closer look at *Cunningham* shows that what the Court will examine in terms of supporting documentation related to attorney fees are records that show "the hours actually spent and the number of hours deemed reasonable." *Id*. at 485.  The goal of this inquiry is to determine whether hours are excessive or redundant given the nature of the litigation. *Id.* Neither *Cunningham*, *Hensley* (*infra*), nor any other cases cited by CARD support the type of "deep dive" into attorney invoices which CARD suggests.

Three other issues cut against CARD's argument that BNSF's documentation and amount of attorney fees are "unreasonable" in the current matter.  First, CARD's counsel himself has submitted attorney fee claims nearly identical in terms of documentation to this very court in other unrelated matters as the prevailing party. *See FSEE v. USFS*, No. CV-22-168-M-DLC (Doc. 47). In fact, BNSF modeled its fee documentation on CARD counsel's submission. Presumably, this fee application was not inadequately documented.  It appears that no fees were reduced in this instance either.

Second, CARD has submitted substantial attorney fees of its own in this matter – to the United States Bankruptcy Court. In CARD's Petition for Chapter 11 Bankruptcy, CARD notes that its counsel in this *Qui Tam* action is entitled to an attorney fee amount of $448,063.00. *See In re Center for Asbestos Related Disease, Inc.*, Case No. 9:23-bk-90135-BPH (Doc. 11 at 2). This is a substantial fee.

BNSF's fees do exceed CARD's attorney fee. But several considerations should be taken into account related to this difference. CARD counsel propounded almost zero written discovery in this case. CARD did not notice a single deposition in this matter aside from three government witnesses. CARD did not carry the burden of proof in this case. CARD counsel was presumably not even involved in this litigation for the same amount of time as the plaintiff's attorneys here as this matter remained under seal for well over a year. CARD's trial co-counsel did not appear in this matter until the week before trial. Add to this fact that CARD did not apparently assign a paralegal to this case, nor did CARD apparently pay any other attorneys as co-counsel. Finally, CARD did not investigate or build this case – BNSF did. There are clear reasons why BNSF's attorney fees would be substantially greater than CARD's fees.

Ultimately, the expenditure of those fees resulted in a successful outcome in this case. The four-year litigation of this case, culminating in a nearly three-week trial, was expensive. Even CARD's fee for one attorney shows this.

In conclusion, Relator's fees are reasonable and supported by adequate documentation. Both CARD's attorney fees in this matter, as well as CARD's documentation in support of fees in other matters, support this conclusion.

**B.     Relator's attorney fees are based on a successful result in this litigation, despite CARD's argument to the contrary.**

CARD argues that "[w]hen the plaintiff has failed to prevail on a distinct claim, those hours 'should be excluded.'" (CARD's Br., Doc. 248 at 5 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). First of all, CARD seems to have taken liberties with the holding of *Hensley*. What Hensley actually holds is that:

> We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U. S. C. § 1988. <u>Where the plaintiff has failed to prevail on a *claim that is distinct in all respects from his successful claims*</u>, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. ***Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.*** But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley*, 461 U.S. at 440 (emphasis added). Thus, CARD would appear to be asking this Court to apply a "mathematical approach" to the question of reasonable attorney's fees for any "unsuccessful" counts under the False Claims Act.

There are several fundamental problems with this approach. First, even the Court in *Hensley* rejected such a strictly mathematical approach:

> We agree with the District Court's rejection of "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." . . . Such a ratio provides little aid in

> determining what is a reasonable fee in light of all the relevant factors. Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time.

*See Hensley*, 461 U.S. at 435 n.11.

Second, even CARD's calculation of "unsuccessful" claims is flawed. The ratio CARD asserts of successful/unsuccessful claims is a complete fabrication. CARD has chosen a random number of 2,016 unique patients to serve as the basis for the total number of false claims that BNSF could have presented to the jury. This is a fiction. (CARD's Br., Doc. 248 at 6). Indeed, CARD provides no citation to any record for the use of this 2,016 figure. *Id.*

Then, CARD applies 2,016 as the denominator to attempt to portray a meager percentage of successful false claims in this matter: 337/2,016 = 16.7%. (CARD's Br., Doc. 248 at 6). But these numbers are nowhere supported by the record. Thus, CARD's entire premise that there was only a small percentage of claims that prevailed in this case is a complete fabrication.

Third, there was no total amount of false claims presented in this case for the jury's consideration, nor was there a jury suggestion for a total amount of monetary penalties. Accordingly, there is no basis for the calculation of a ration of successful/unsuccessful claims.

5

While BNSF <u>did</u> suggest in closing that the jury could make a fraud finding of between 333 and 1,009 individual false claims based on Economist Eric Hines report, no specific dollar amount was requested.  The recommendation was to look at the evidence presented at trial, calculate how many false claims had been made, and apply a multiplier of approximately monetary damages to each false claim, as set forth in the expert economist's summaries and related trial exhibits 95, 269 and 283.  (*See* Doc. 229 at 63; Doc. 231 at 377; Doc. 231 at 523),   The jury rendered a verdict within the range suggested by BNSF counsel.  This constitutes a success.

Finally, none of the caselaw cited by CARD actually stands for the propositions CARD suggests.  For example, the Court in *Hensley* recognizes that any apportionment of attorney fees on a claim-by-claim would be difficult, if not impossible:

> It may well be that cases involving such unrelated claims are unlikely to arise with great frequency.  Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley*, 461 U.S. at 435.  Thus, even cases CARD cites, cut against reducing the attorney fees in this matter.

CARD cites *Popham v. Kennesaw*, 820 F.2d 1570 (1987), as standing for the proposition that while the Court need not diminish the award in a "strictly mathematical approach," many courts find a percentage reduction is appropriate when the prevailing party's success is limited. (CARD's Br., Doc. 248 at 5).

However, *Popham* was a case which involved claims that the district court believed may have been brought against the defendant "vexatiously . . . in order to harass or embarrass the defendants" and that the reduction in the plaintiff's attorney fees was "an **equitable** approach to this attorney's fee conflict." *Popham*, 820 F.2d at 1582 (emphasis added). Furthermore, as demonstrated above, it is not possible to determine a ratio of successful/unsuccessful claims in the current matter, nor do the facts allow any sort of apportionment of attorney fees to unsuccessful claims here.

CARD argues that in cases of limited recovery, fees should be reduced. A very limited recovery was the focus of *Erkins v. Bryan*, 785 F.2d 1538, 1545-46 (11th Cir. 1986). But in *Erkins*, plaintiff's counsel sought a fee *enhancement* of 50% above what their hours reflected on the basis that the three-day trial was "complex." *Id*. at 1545. Furthermore, the plaintiffs argued for the Court to award "out-of-town" counsel rates that were considerably higher than the appropriate local rate. *Id.* The Court also noted that the attorneys sought a fee that was nearly ten-times the amount recovered in the litigation. *Id*. With all of these factors in mind, the Court in *Erkins* reasoned that the outcome achieved by the plaintiffs was "less than a success." *Id*. at

7

1546. Accordingly, the Court rejected plaintiff's argument to enhance the fees allowed, and ultimately awarded an amount limited to three times the amount recovered at trial. None of these issues are present in the current matter.

The final case cited by CARD, *Greater Los Angeles Council on Deafness v. Community Television of Southern California*, 813 F.2d 217 (9th Cir. 1987) ("*Cmty. Television*"), also addresses appropriate attorney fee awards. Unlike the current matter, plaintiffs in *Cmty. Television* did not win a final judgment on the merits. *Id.* at 219. Rather, plaintiffs achieved "far less" than the relief that they sought – a nonmonetary award in the form of a clarification of a government policy related to open captioning on television broadcasts. *Id*. Ultimately, the Court did reduce the lodestar amount of $337,092.50 to $134,837 – not by using a mathematical ratio of wining claims to losing claims - but by comparing the "significance of the overall relief obtained" to all the claims and remedies plaintiffs pursued in litigation. *Id*. at 222.

In the current matter, the outcome is different from each case cited by CARD. The amount awarded here was $5.8M dollars. The attorney fees claimed are a fraction of that amount – less than 25% of the recovery here. Although the defense is correct that Relator may have been able to recover more from trial in this matter, a jury demand of a higher amount was never made. The jury was encouraged to follow the evidence, apply the formula set forth by forensic economist Eric Hines,

and calculate an appropriate award. The jury did just that. The resulting award exceeded the attorney fees in this case by well over four million dollars. Courts have noted that this factor alone indicates a successful result.

Also, the significance of the overall relief obtained was significant in this matter. Not only did the jury find that CARD had committed hundreds of violations of the False Claims Act, the verdict in this matter has ostensibly stopped CARD's practice of routinely ignoring the standards of care for medical practitioners. The verdict and penalties may result in preventing the clinic from misdiagnosing hundreds more of the residents of Libby, Montana, prescribing unnecessary opioid pain medications, and, in many cases, this verdict may stop CARD from preventing patients from getting the care they actually need for conditions they actually have – not distracting them with the specter of a disease they do not have. These are significant results. Much more so than any referenced in the case law cited by CARD.

In the final analysis, the mathematical ratio approach suggested by CARD to reduce the attorney fees in this matter is undercut by the very caselaw CARD cites:

> Of course, plaintiffs need not prevail on every claim to receive a full fee. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. ***The result is what matters.***"

*Cmty. Television*, 813 F.2d at 222 (quoting *Hensley*, 461 U.S. at 435) (emphasis added).

## CONCLUSION

For all of the foregoing reasons, Relator in this action respectfully requests that this Court award attorney fees and costs in the full amount requested by BNSF in this matter.

DATED this 13th day of September, 2023.

KNIGHT NICASTRO MACKAY, LLC

By: /s/ W. Adam Duerk
W. Adam Duerk
*Attorneys for BNSF Railway Company*

## CERTIFICATE OF COMPLIANCE

Pursuant to the United States District Court for the District of Montana Local Rule of Procedure 7.1(d)(2)(E), I certify this pleading contains less than 3,250 words, as calculated by Microsoft Word, excluding the caption, certificate of service, certificate of compliance, table of contents, and table of authorities.

KNIGHT NICASTRO MACKAY, LLC

By: /s/ W. Adam Duerk
W. Adam Duerk
*Attorneys for BNSF Railway Company*

## CERTIFICATE OF SERVICE

I certify on this 13th day of September, 2023, a copy of the foregoing document was served upon the following persons by the following means:

| | |
|---|---|
| __1-3__ | CM/ECF |
| _____ | Mail |
| _____ | Hand Delivery |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | Email |

1. Clerk, U.S. District Court

2. Michael Kakuk
   Assistant U.S. Attorney
   U.S. Attorney's Office
   901 Front Street, Suite 1100
   Helena, MT 59626
   michael.kakuk@usdoj.gov

3. Timothy Bechtold
   Bechtold Law Firm, PLLC
   PO Box 7051
   Missoula, MT 59807
   Facsimile: 406-830-3085
   tim@bechtoldlaw.net


KNIGHT NICASTRO MACKAY, LLC

By: __/s/ W. Adam Duerk__
     W. Adam Duerk
     *Attorneys for BNSF Railway Company*

11