IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BNSF RAILWAY COMPANY, on behalf of THE UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>THE CENTER FOR ASBESTOS RELATED DISEASE, INC.,<br><br>  Defendant. | CV 19–40–M–DLC<br><br><br><br>ORDER |

Before the Court is Relator BNSF's Motion for Fees and Costs. (Doc. 239.) BNSF seeks $1,468,371.50 in attorneys' fees and $322,657.20 in costs after having successfully litigated a False Claims Act ("FCA") *qui tam* action against Defendant Center for Asbestos Related Disease, Inc. ("CARD"). (Doc. 243 at 11, 12.) In support of the motion, BNSF's counsel has provided a summary of fees and costs and a supporting affidavit. (Doc. 241.) CARD opposes the motion. (Doc. 248.)

## BACKGROUND

BNSF brought this *qui tam* action, pursuant to 31 U.S.C. § 3730, alleging that CARD violated the False Claims Act ("FCA"), §§ 3729(a)(1)(A), (B), and (G). (Doc. 66 at 49–54.) BNSF alleged that CARD submitted false statements

1

through Environmental Health Hazards Medicare Coverage forms to the Social Security Administration, bills to Medicare for opioid and other drug prescriptions, and grant applications and reports to the American Toxic Substances Disease Registry and Centers for Disease Control and Prevention.  (*See id.* at 48–54.)  On November 30, 2022, the Court granted summary judgment in favor of CARD as to BNSF's claim that CARD was falsely awarded a $5,500 grant sub-award from Mt. Sinai and denied summary judgment as to all remaining claims.  (Doc. 131.)

This matter proceeded to a jury trial on the remaining claims on June 12, 2023.  (Doc. 175.)  On June 28, 2023, the jury found CARD liable for 337 violations of the FCA, totaling $1,081,265.00 in actual damages to the United States.  (Doc. 216.)  The Court entered an amended judgment on July 18, 2023, finding CARD liable for $5,826,023.00 in total damages after applying the FCA's treble damages and statutory penalties provisions.  (Doc. 233 at 1.)  The Court also awarded BNSF 25% of the total damages award as relator.  (*Id.*)

On July 20, 2023, CARD filed a Notice of Appeal.  (Doc. 234.)  BNSF filed its Motion for Fees and Costs on August 1, 2023.  (Doc. 239).  On August 8, CARD filed a Notice of Bankruptcy Filing.  (Doc. 244.)  The Court stayed the Motion for Fees and Costs pending the bankruptcy proceedings.  (Doc. 263.)  The Court was notified that the bankruptcy proceedings were voluntarily dismissed on April 30, 2024, and subsequently lifted the stay.  (Doc. 266.)  Neither party moved

2

to stay the Motion for Fees and Costs pending the ongoing appeal in the Ninth Circuit Court of Appeals.[1]  Accordingly, the Motion for Fees and Costs is now ripe for ruling.

## LEGAL STANDARDS

Rule 54 of the Federal Rules of Civil Procedure requires that a "claim for attorney[s'] fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."  Fed. R. Civ. P. 54(d)(2)(A).  A motion for fees must:

(i)  be filed no later than 14 days after the entry of judgment;
(ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
(iii) state the amount sought or provide a fair estimate of it; and
(iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Fed. R. Civ. P. 54(d)(2)(B).

Under the FCA, prevailing relators are entitled to "receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs."  31 U.S.C. § 3730(d)(2).  "All such expenses, fees, and costs shall be awarded against the defendant."  *Id.*  The lodestar method is the correct framework for calculating reasonable attorneys' fees under federal fee-shifting statutes, such as § 3730(d)(2).  *Carter v. Caleb Brett LLC*, 757

---

[1] The Court retains the power to award attorneys' fees after a notice of appeal from the decision on the merits has been filed.  *Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir. 1983).

F.3d 866, 868 (9th Cir. 2014); *see also United States ex re. Sant v. Biotronik, Inc.*, 716 F. App'x 590, 592 (9th Cir. 2017) (upholding the district court's use of the lodestar method for calculating reasonable attorneys' fees under the FCA).

**DISCUSSION**

## I. Prevailing Party Status

"The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989). A plaintiff need only succeed on a "significant issue" that achieves "some of the benefit the part[y] sought in bringing suit," to "cross[] the threshold to a fee award of some kind." *Id.* at 792. "[W]hile the nature and quality of relief may affect the amount of the fees awarded, an extremely small amount of relief is sufficient to confer prevailing party status." *Saint John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1059–60 (9th Cir. 2009).

Here, there is no dispute that BNSF is a prevailing party under the FCA. Although the jury did not find for BNSF on all claims, the jury returned a verdict in BNSF's favor and judgment was entered in BNSF's favor. CARD does not dispute BNSF's prevailing party status but argues that the degree of success should be taken into consideration when determining what amount of attorneys' fees is

reasonable. The Court will address this argument below.

## II. Lodestar Figure

Because BNSF is entitled to fees as a prevailing party, the Court must next determine what amount of fees is reasonable. The Court begins by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate" to determine the lodestar. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The fee applicant must first carry his burden to submit evidence in support of his request. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). The fee opponent then bears the burden of rebuttal and may submit evidence to show the requested fee is not reasonable. *Id.* at 1397–98.

The Ninth Circuit also requires that courts consider some or all of twelve relevant criteria set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), when determining what amount of fees is reasonable. *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988). The *Kerr* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 539 n.1; *see also Carter*, 757 F.3d at 869. Many of these factors have been

subsumed into the lodestar calculation. *See Cunningham v. Cnty. of L.A.*, 879 F.2d 481, 484 (9th Cir. 1988). However, once the lodestar has been established, "the court may increase or reduce the presumptively reasonable lodestar fee with reference to the [*Kerr*] factors that have not been subsumed in the lodestar calculation." *Id.*

The Supreme Court has cautioned that "[t]here is no precise rule or formula for making these determinations" and "[t]he court necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at 436–37. Nonetheless, an award of fees must be accompanied by a "concise but clear explanation" of reasons. *Id.* at 437.

### A.  *Hourly Rate*

In determining a reasonable hourly rate, the Court should consider the prevailing rate in the relevant legal community for similar work performed by attorneys of comparable skill, experience, and reputation. *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210–11 (9th Cir. 1986). Here, BNSF seeks varying rates depending on the individual, position, year, and, presumably, work performed, although the Court is unable to verify this last detail for the reasons discussed below. BNSF's hourly rates range from $180 to $325 for attorneys and $95 to $140 for paralegals. (Doc. 241 at 6–7.)  CARD does not challenge these rates as unreasonable and the Court finds that, based on the experience, reputation, and

ability of the legal professionals involved and prevailing rates in this district, the hourly rates are reasonable.

### B. Hours Charged

"The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The Court may reduce the number of hours awarded if the Court finds that the attorney performed unnecessarily duplicative or otherwise unreasonable work or failed to provide adequate documentation. *Hensley*, 461 U.S. at 433, 440.

BNSF has submitted a summary of the hours expended over the course of the litigation and an affidavit in support of these hours. (Docs. 241, 248-1.) BNSF reports spending a total of 7,333.7 hours across five years, five attorneys, and ten paralegals. (Doc. 241 at 6–7.) Having reviewed these records and counsel's affidavit, the Court finds that BNSF's time was largely spent reasonably, especially in light of the number of medical records, expert opinions, and complex legal issues involved in this matter. However, the Court also finds that some reductions are appropriate to reflect BNSF's limited degree of success and to account for inadequate documentation.

First, BNSF was not successful on all of its claims but ultimately obtained a result that was overall favorable. The Court must keep in mind that "plaintiffs are

to be compensated for attorney[s'] fees incurred for services that contribute to the ultimate victory in the lawsuit. Thus, even if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims." *Cabrales v. Cnty. of L.A.*, 935 F.2d 1050, 1052 (9th Cir. 1991). The Court must ask "whether the successful and unsuccessful claims are distinctly different . . . or involve a common core of facts or are based on related legal theories." *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 901 (9th Cir. 1995) (internal quotation marks omitted). BNSF's complaint alleged that CARD violated the FCA by knowingly presenting or causing to be presented: (1) "false or fraudulent claims for payment or approval to the federal government;" (2) "a false record or statement material to a false or fraudulent claim;" and (3) "false records or statements material to an obligation to pay or transmit money or property to the government." (*Id.*). (Doc. 66 at 49–54.) BNSF made several allegations regarding CARD's federal grant applications, including that CARD fraudulently acquired "$5,500 'for CT Scans at CARD'" as part of a grant sub-award from the Mount Sinai School of Medicine ("Mt. Sinai"), although "[t]here has never been a CT scanner at CARD." (Doc 66-1. at 34.) The Court ultimately granted summary judgment in favor of CARD with respect to this claim, (Doc. 131 at 12), which is legally and factually distinct from BNSF's other claims.

      Regarding the remaining claims, the Court is unable to determine the theory

under which the jury found CARD liable. BNSF suggested that the jury could find CARD liable for 333 to 1,009 individual false claims, and the jury returned a verdict within this range, but the verdict did not identify the legal theory under which the jury found CARD had violated the FCA. Perhaps most importantly, the Court ultimately agreed with BNSF's position regarding what constitutes a "diagnosis" under the Affordable Care Act and instructed the jury as such. (*See* Doc. 202-1 at 39.) This was a core issue in the case and was a primary focus of the parties leading up to and during trial. Based on the foregoing, the Court rejects CARD's suggestion that BNSF only obtained a "miniscule fraction" of the relief requested, (Doc. 248 at 5), but finds that a small reduction in the requested attorneys' fees based on limited success appropriate.

Second, the documentation submitted by BNSF limits the Court's ability to analyze the appropriateness of the work performed because it lacks sufficient detail. An applicant for attorneys' fees "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims" and activities performed. *Hensley*, 461 U.S. at 437; *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (recognizing a district court's "authority to reduce hours that are billed in block format"); *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (holding that a district court may reduce hours to offset "poorly documented" billing). Here, BNSF's records indicate the "timekeeper,"

"position," "rate", "hours," and "total fees" without any description as to the work performed. (*See* Doc. 241.) BNSF indicated that more detailed "daily" records were available upon request, (*id.* at 3), and CARD appears to have requested and provided those records, which break down the hours in more detail but still fail to provide any description of the work performed, (*see* Doc. 248-1.) BNSF's documentation is therefore inadequate because it leaves the Court unable to determine for itself what hours were spent reasonably, especially considering that BNSF did not succeed on all claims. Accordingly, the Court concludes that BNSF's time keeping records warrant a reduction in the total hours billed.

Where the Court deems an adjustment is required, it "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award." *Hensley*, 461 U.S. at 436–37. However, the Supreme Court has rejected "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." *Id.* at 435 n.11. The Court finds that a 25% reduction from BNSF's submitted hours is appropriate and sufficiently accounts for the above mentioned factors. Because BNSF has submitted variable hourly rates and the Court cannot determine which specific hours were spent unreasonably, the Court will apply this 25% reduction to the total fees sought by BNSF.

### C. *Adjustments to the Lodestar Figure*

In addition to billing judgment reductions, in rare cases, a district court may make upward or downward adjustments to the presumptively reasonable lodestar on the basis of those *Kerr* factors that have not been deemed subsumed in the lodestar calculation. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564–65 (1986); *Blum v. Stenson*, 465 U.S. 886, 897–900 (1984); *Hensley*, 461 U.S. at 434; *Cunningham*, 879 F.2d at 484. CARD has not raised any arguments outside of the degree of success obtained and the adequacy of the documentation provided, which are each factors that have been subsumed by the lodestar calculation. *Cunningham*, 879 F.2d at 487. Accordingly, the Court finds that there is no basis to further alter the presumptively reasonable lodestar figure.

### III. Fees on Fees

BNSF has not explicitly requested fees associated with bringing the instant motion, although these hours may already be accounted for in BNSF's submitted hours. A court may award fees incurred litigating a fee dispute. *Davis v. City & Cnty. of S.F.*, 976 F.2d 1536, 1544 (9th Cir. 1992), v*acated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993). The same *Hensley* principles apply to such an award. *Thompson v. Gomez*, 45 F.3d 1365, 1368 (9th Cir. 1995). Accordingly, if BNSF has included hours spent litigating fees in its summary of hours, the Court's previous analysis applies equally to these hours.

### IV. Costs

Pursuant to § 3730(d)(2), BNSF is also entitled to reasonable and necessary costs. BNSF has provided a summary of costs that includes filing fees, deposition costs, expert witness fees and costs, lay witness fees and costs, process server/investigator fees, exhibit fees, and transcript fees. (Doc. 241 at 8–9.) BNSF requests a total of $322,657.20 in costs. (*Id*. at 8.) CARD contends that BNSF's costs should be reduced for the same reasons discussed above. (Doc. 248 at 7.) The Court does not find a reduction in the requested costs warranted.

### CONCLUSION

Based on the foregoing, the Court concludes that a total award of $1,101,279.38 in attorneys' fees, representing a 25% reduction from BNSF's requested fees, and $322,657.20 in costs is appropriate in this matter.

Accordingly, IT IS ORDERED that the motion (Doc. 239) is GRANTED IN PART. CARD shall pay BNSF $1,101,279.38 in attorneys' fees and $322,657.20 in costs, for a total award of $1,423,936.58.

DATED this 28th day of May, 2024.

_____
Dana L. Christensen, District Judge
United States District Court