NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 24 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BNSF RAILWAY COMPANY, Relator; UNITED STATES OF AMERICA,

Plaintiffs-Appellees,

v.

CENTER FOR ASBESTOS RELATED DISEASE, INC.,

Defendant-Appellant.

No. 23-35507

D.C. No. 9:19-cv-00040-DLC

MEMORANDUM*

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, District Judge, Presiding

Argued and Submitted August 21, 2024
Portland, Oregon

Before: CHRISTEN, NGUYEN, and HURWITZ, Circuit Judges.

The Center for Asbestos Related Disease (CARD) appeals a judgment in favor of relator BNSF Railway Company (BNSF) in this *qui tam* action filed pursuant to the False Claims Act (FCA), 31 U.S.C. §§ 3729–30. The jury found CARD liable for 337 false claims. The parties are familiar with the facts, so we do

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

not recount them here. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

1. The district court did not err in denying CARD's motion for summary judgment on the falsity, scienter, and materiality elements of the FCA claims, *see United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 898–99 (9th Cir. 2017), nor on the applicable statute of limitations, 31 U.S.C. § 3731(b).[1] Only the legal issues CARD challenged at the summary judgment level are properly before us, as "factual issues addressed in summary-judgment denials are unreviewable on appeal." *Dupree v. Younger*, 598 U.S. 729, 735 (2023).

The district court correctly denied summary judgment on falsity, scienter, and materiality because each required fact-specific inquiries that remained for the jury: whether CARD submitted false or fraudulent information (falsity), whether its statements reflected "honestly held" opinions (scienter), and what the relevant federal agencies knew about the claims CARD submitted (materiality). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The statute of limitations issue was also fact-bound because it depended on when the relevant government official knew or should have known of the material

---

[1] CARD also argues that the district court erred by denying its Rule 50(a) motion on these issues, but CARD waived this argument by failing to file a Rule 50(b) motion after the jury verdict. Fed. R. Civ. Pro. 50(b); *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 401–04 (2006).

facts underlying the claims CARD submitted. *See* 31 U.S.C. §3731(b)(2); *e.g. United States ex rel. Purcell v. MWI Corp.*, 254 F. Supp. 2d 69, 78 (D.D.C. 2003). The district court did not err at the summary judgment stage by concluding that the earliest alleged false claim was not barred by the statute of limitations.

    2. CARD also challenges several jury instructions. We review de novo whether the jury instructions correctly state the law. *Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014) (en banc). "Jury instructions must be supported by the evidence, fairly and adequately cover the issues presented, correctly state the law, and not be misleading." *Id.* An instruction error requires reversal "unless the error is more probably than not harmless." *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (quoting *Dang v. Cross*, 422 F.3d 800, 811 (9th Cir. 2005)).

    a. CARD's appeal involves 112 claims for which CARD submitted Medicare eligibility forms certifying that the patients had been diagnosed with an asbestos-related disease, even though no CARD doctor had made that diagnosis.[2]

---

[2] Although CARD challenges only 112 claims, BNSF presented evidence of more than 1,000 claims of fraud to the jury. The jury found CARD liable for 337 claims, and the verdict form did not specify which claims comprised the verdict. But there are 333 claims for which there was no radiologist read identifying a possible asbestos-related disease. The governing statute, 42 U.S.C. § 1395rr-1, requires radiographic support. *Id.* § 1395rr-1(e)(2)(B)(i)(I). There are two claims for diagnoses signed by a nurse but no physician, and several other claims submitted for CARD staff members without radiographic support. CARD does not challenge these sets of claims. "Because we cannot determine one way or another" whether the jury's verdict rested in part on the 112 claims CARD challenges, "we cannot

3

For each of these claims, CARD relied on radiological reads from an outside "B-Reader."

CARD argues on appeal that the Affordable Care Act, 42 U.S.C. § 1395rr-1(e)(2)(B)(i), permitted it to submit these forms based solely on the positive "B-Read," and therefore challenges the district court's definition of "diagnosis" in Instruction F-24. There is no dispute, however, that the statute requires *a diagnosis* by someone.[3] 42 U.S.C. § 1395rr-1(e)(2)(A)(i) ("An individual described in this paragraph is any individual who . . . *is diagnosed* with 1 or more conditions described in subparagraph (B)[.]"). But CARD conceded before trial that "B-Readers do not diagnose," and that "an abnormality detected by a B-reader is not considered a diagnosis of asbestos related disease."[4] Given the statutory requirement for a diagnosis and CARD's stipulations, any error in the F-24

---

say that the verdict would have been the same" without the district court's alleged errors. *Clem*, 566 F.3d at 1183.

[3] CARD's briefing in part argued that the text of the statute was ambiguous and required *Chevron* deference to agency interpretations. We no longer recognize *Chevron* deference after *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2254 (2024). But even if we were to give agency interpretations persuasive effect, *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), CARD's argument fails for the reasons stated herein. We thus deny as moot CARD's Motion for Judicial Notice of a purported agency interpretation, Dkt. No. 35.

[4] The evidence at trial also showed that CARD sent letters to many of the "B-read only" patients for whom it filed Medicare claims stating that they "had no diagnosis of asbestos related disease."

4

instruction was harmless.[5]  *See Clem*, 566 F.3d at 1183.

b.  Instruction F-23 read, in part, "Certification of a person as eligible for Medicare coverage . . . who does not satisfy these requirements is a false claim." CARD contends this instruction compelled the jury to find CARD liable for false statements without finding scienter.  But CARD did not make this objection at trial.[6]  Fed. R. Civ. P. 51(c)(1).  Thus, we review only for plain error.  Fed. R. Civ. P. 51(d)(2); *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1065 (9th Cir. 2020) (en banc).  We find none.  Instruction F-23 pertained to the falsity element of the FCA, not the scienter element.  Jury instructions are reviewed "as a whole." *Led Zeppelin*, 952 F.3d at 1065.  The district court properly instructed the jury that CARD was liable only if BNSF could prove each of the required elements of the FCA, including scienter, and the court separately instructed the jury on scienter.

c.  CARD also argues that Instruction F-20 erroneously stated the law and precluded the jury from considering CARD's contention that it lacked scienter when it submitted the "B-Read only" claims because it thought it was following

---

[5] Nothing in this memorandum should be construed to deny Medicare eligibility or benefits to the patients listed in BNSF's claims against CARD.  We consider eligibility only through the lens of the FCA, and do not reach whether these patients are, in fact, Medicare eligible.

[6] CARD's sole objection to Instruction No. F-23 was that the last sentence should be omitted because "these are the requirements, but the summary is not one of the requirements of the diagnosis."

5

agency directives.  Instruction F-20 stated: "In evaluating a defendant's knowledge, you may consider that parties who seek public funds are expected to know the law and may not rely on the conduct of Government agents contrary to law."  This instruction accurately recites the law.  *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 63 (1984) ("Protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law . . . . [T]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law.").  Instruction F-20 also states the "good faith" rule central to CARD's defense: "A defendant who relies on a good faith interpretation of a regulation is not subject to liability under the Act, even if that interpretation is objectively unreasonable."  Instructions F-18 and F-19 further detail the scienter element.  Viewing the jury instructions "as a whole," *Led Zeppelin*, 952 F.3d at 1065, the instructions accurately explained the scienter element and the jury was free to make its own determination of whether CARD's "B-Read only" practice was "honestly held."  *See Winter ex rel. United States v. Gardens Reg'l Hosp. and Med. Ctr., Inc.*, 953 F.3d 1108, 1117–18 (9th Cir. 2020).

    3.  The district court did not err by excluding testimony of Senator Baucus pursuant to Evidence Rule 403 because it carried a high risk of unfairly prejudicing the jury.  District courts have "wide discretion" to determine the admissibility of

6

evidence, and "[t]his is particularly true with respect to Rule 403 since it requires an on-the-spot balancing of probative value and prejudice[.]" *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008).  The district court also reasoned that it was the court's role to instruct the jury on the controlling law, which was the subject of the proposed testimony.  Moreover, CARD was able to present alternative evidence of its subjective beliefs and purported "good faith interpretations" of the ACA.

**AFFIRMED.**