IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BNSF RAILWAY COMPANY, on behalf of THE UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>vs.<br><br>THE CENTER FOR ASBESTOS RELATED DISEASE, INC.,<br><br>          Defendant. | CV 19–40–M–DLC<br><br><br><br>ORDER |

Before the Court is Relator BNSF Railway Company's ("BNSF") Motion for Fees Incurred on Appeal. (Doc. 271.) BNSF seeks $98,280 in attorney fees. (*Id.* at 1.) In support of the Motion, BNSF's counsel has provided a summary of fees and costs and supporting affidavits. (Docs. 272-1, 272-2.) For the reasons herein, the Motion (Doc. 271) is GRANTED and BNSF shall be awarded $98,280 in attorney fees.

## BACKGROUND

BNSF brought this 31 U.S.C. § 3730 *qui tam* action alleging that the Center for Asbestos Related Disease ("CARD") violated the False Claims Act ("FCA"), §§ 3729(a)(1)(A), (B), and (G). (Doc. 66 at 49–54.) BNSF alleged that CARD submitted false statements through Environmental Health Hazards Medicare

1

Coverage forms to the Social Security Administration, bills to Medicare for opioid and other drug prescriptions, and grant applications and reports to the American Toxic Substances Disease Registry and Centers for Disease Control and Prevention. (*See id.* at 48–54.) On November 30, 2022, the Court granted summary judgment in favor of CARD as to BNSF's claim that CARD was falsely awarded a $5,500 grant sub-award from Mt. Sinai and denied summary judgment as to all remaining claims. (Doc. 131.)

This matter proceeded to a jury trial on the remaining claims on June 12, 2023. (Doc. 175.) On June 28, 2023, the jury found CARD liable for 337 violations of the FCA, totaling $1,081,265.00 in actual damages to the United States. (Doc. 216.) The Court entered an amended judgment on July 18, 2023, finding CARD liable for $5,826,023.00 in total damages after applying the FCA's treble damages and statutory penalties provisions. (Doc. 233 at 1.) The Court also awarded BNSF 25% of the total damages award as relator. (*Id.*)

On July 20, 2023, CARD filed a Notice of Appeal. (Doc. 234.) BNSF filed its Motion for Fees and Costs on August 1, 2023. (Doc. 239.) On August 8, CARD filed a Notice of Bankruptcy. (Doc. 244.) The Court stayed the Motion for Fees and Costs pending the bankruptcy proceedings. (Doc. 263.) The Court was notified that the bankruptcy proceedings were voluntarily dismissed on April 30, 2024, and subsequently lifted the stay. (Doc. 266.) On May 28, 2024, the Court awarded

2

BNSF $1,101,279.38 in attorneys' fees and $322,657.20 in costs for trying the underlying case, for a total award of $1,423,936.58. (Doc. 267 at 12.)

On November 18, 2024, the Ninth Circuit entered its mandate affirming the judgment entered in this case. (Doc. 270.) The Ninth Circuit found this Court did not err in denying CARD's motion for summary judgment on falsity, scienter, and materiality, that CARD failed to preserve its Rule 50 motion, and that the various jury instructions and rulings challenged by CARD were not erroneous. (*See* Doc. 269.) The Ninth Circuit granted BNSF's motion to remand consideration of BNSF's motion for attorney fees incurred on appeal, *BNSF v. Center for Asbestos Related Disease, Inc.*, CV 23-35507, Dkt. No. 53, (9th Cir. Nov. 11, 2024), and BNSF filed the present Motion on December 2, 2024.

## LEGAL STANDARD

Rule 54 of the Federal Rules of Civil Procedure requires that a "claim for attorney[s'] fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A). A motion for fees must:

(i)   be filed no later than 14 days after the entry of judgment;
(ii)  specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
(iii) state the amount sought or provide a fair estimate of it; and
(iv)  disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Fed. R. Civ. P. 54(d)(2)(B).

Under the FCA, prevailing relators are entitled to "receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(2). "All such expenses, fees, and costs shall be awarded against the defendant." *Id.* The lodestar method is the correct framework for calculating reasonable attorneys' fees under federal fee-shifting statutes, such as § 3730(d)(2). *Carter v. Caleb Brett LLC*, 757 F.3d 866, 868 (9th Cir. 2014); *see also United States ex re. Sant v. Biotronik, Inc.*, 716 F. App'x 590, 592 (9th Cir. 2017) (upholding the district court's use of the lodestar method for calculating reasonable attorneys' fees under the FCA). "When a party is entitled to an award of attorney's fees in the court of first instance . . . she is ordinarily entitled to recover fees incurred in successfully defending the judgment on appeal." *In re Schwartz-Tallard*, 803 F.3d 1095, 1101 (9th Cir. 2015).

## DISCUSSION

### I. Prevailing Party Status

"The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989). A plaintiff need only succeed on a "significant issue" that achieves "some of the benefit the part[y] sought in bringing suit," to "cross[] the threshold to a fee award of some kind." *Id.* at 792. "[W]hile

4

the nature and quality of relief may affect the amount of the fees awarded, an extremely small amount of relief is sufficient to confer prevailing party status." *Saint John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1059–60 (9th Cir. 2009).

There is no dispute that BNSF is the prevailing party. The Court previously concluded that BNSF was a prevailing party under the FCA for purposes of the underlying judgment (Doc. 267 at 4), and because BNSF succeeded on all claims brought before the Ninth Circuit, BNSF is also the prevailing party for purposes of the appeal. CARD does not dispute BNSF's prevailing party status. (*See* Doc. 273.)

## II. Lodestar Figure

Because BNSF is entitled to fees incurred on appeal, the Court must next determine the reasonable fee amount. The Court begins by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate" to determine the lodestar. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The fee applicant must first carry his burden to submit evidence in support of his request. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). The fee opponent then bears the burden of rebuttal and may submit evidence to show the requested fee is not reasonable. *Id.* at 1397–98.

The Ninth Circuit also requires that courts consider some or all of twelve

relevant criteria set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), when determining what amount of fees is reasonable. *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988). The *Kerr* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 539 n.1; *see also Carter*, 757 F.3d at 869. Many of these factors have been subsumed into the lodestar calculation. *See Cunningham v. Cnty. of L.A.*, 879 F.2d 481, 484 (9th Cir. 1988). However, once the lodestar has been established, "the court may increase or reduce the presumptively reasonable lodestar fee with reference to the [*Kerr*] factors that have not been subsumed in the lodestar calculation." *Id.*

The Supreme Court has cautioned that "[t]here is no precise rule or formula for making these determinations" and "[t]he court necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at 436–37. Nonetheless, an award of fees must be accompanied by a "concise but clear explanation" of reasons. *Id.* at 437.

6

### A. Hourly Rate

In determining the reasonable hourly rate, the Court should consider the prevailing rate in the relevant legal community for similar work performed by attorneys of comparable skill, experience, and reputation. *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210–11 (9th Cir. 1986).

Here, BNSF seeks an hourly rate of $385 for Dale Schowengerdt and $300 for Timothy Longfield, which represent counsels' discounted rate based on their longstanding professional relationship with BNSF. (Doc. 272 at 6; 272-1 ¶ 9.) Counsel for BNSF are experienced appellate practitioners who have considerable experience in litigating complex appeals such as the one at issue here. (Docs. 272-1 ¶¶ 2–8; 272-2 ¶¶ 3–9.) Moreover, counsels' rates are comparable to those with similar experience in Montana (Doc. 272-1 ¶¶ 9–10), and to those charged by counsel for CARD in other cases. *See, e.g., Native Ecosystems Council v. Krueger*, 2019 WL 1489839, at *5 (D. Mont. Apr. 4, 2019) (recognizing an hourly rate of $340 as fair and consistent); *Alliance for the Wild Rockies v. Savage*, 2019 WL 3293425, at *6–7 (D. Mont. July 22, 2019) (hourly rate in 2018 of $340 to $440 as fair). CARD does not challenge these rates as unreasonable. (*See* Doc. 273.)

Accordingly, the Court finds that, based on the experience, reputation, and ability of counsel and the prevailing rates in this district, the hourly rates of $385 for Mr. Schowengerdt and $300 for Mr. Longfield are reasonable.

## B. Hours Charged

"The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Courts need not engage in an "hour by hour analysis of the fee request." *Deukmejian*, 987 F.2d at 1399. "Normally [the fee award] will encompass all hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. The Court may reduce the number of hours awarded if the Court finds the attorney performed unnecessarily duplicative or otherwise unreasonable work or failed to provide adequate documentation. *Id.* at 433, 440.

Here, BNSF has submitted a summary of the hours expended over the course of the appeal and an affidavit in support of these hours. (Docs. 272-1, 272-2.) Mr. Showengerdt reports spending 179.4 hours, and Mr. Longfield reports spending 100.5 hours, in litigating this appeal over approximately nine months. (Docs. 272-1 ¶ 14, 6–24.) BNSF also notes that counsel reduced the number of hours by approximately 20% to account for time needed to familiarize and orient themselves to the underlying case and tasks for appeal. (Doc. 272 at 9.) Having reviewed these records and counsels' affidavits, the Court finds that BNSF's time was reasonably spent, particularly in light of the complexity and breadth of the appeal, BNSF's 20% reduction, and the fact that BNSF prevailed on every claim on appeal. The

Court further finds that counsel for BNSF kept detailed time records that correspond with descriptions of the work performed. (*See* Doc. 272-1 at 6–24.) Because BNSF provided adequate documentation, the Court need not reduce the number of hours awarded. *See Hensley*, 461 U.S. at 433, 440.

### C. Adjustments to the Lodestar Figure

In addition to billing judgment reductions, in rare cases, a district court may make upward or downward adjustments to the presumptively reasonable lodestar on the basis of those *Kerr* factors that have not been deemed subsumed in the lodestar calculation. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564–65 (1986); *Blum v. Stenson*, 465 U.S. 886, 897–900 (1984); *Hensley*, 461 U.S. at 434; *Cunningham*, 879 F.2d at 484. CARD has not raised any arguments in this respect. Accordingly, the Court finds that there is no basis to further alter the presumptively reasonable lodestar figure.

## III. Fees on Fees

BNSF requests fees associated with their request for attorney fees. (Doc. 272 at 9.) A court may award fees incurred litigating a fee dispute. *Davis v. City & Cnty. of S.F.*, 976 F.2d 1536, 1544 (9th Cir. 1992), v*acated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993). The same *Hensley* principles apply to such an award. *Thompson v. Gomez*, 45 F.3d 1365, 1368 (9th Cir. 1995). Accordingly, if BNSF included time spent litigating fees in its summary of hours, the Court's

previous analysis applies equally to these hours. BNSF represented that they would supplement their request for fees request upon filing of the reply brief; however, as of the date of this Order, and the reply brief having been filed, the Court has received no such supplemental information. (*See* Doc. 274.) As such, the Court will not award fees on fees.

### IV. Bankruptcy Settlement and Stipulation

In response to BNSF's request for attorney fees, CARD's opposition brief states, in full:

> After the jury verdict in this case, the Center for Asbestos Related Disease, Inc. (CARD) declared bankruptcy. Pursuant to the provisions of the bankruptcy settlement, CARD is opposed to the award of attorney's fees in this case.

(Doc. 273 at 1.) Though not explicitly stated in CARD's response, it appears CARD is referencing a stipulation entered into between the parties as part of CARD's bankruptcy proceedings. *See In re Center for Asbestos Related Disease, Inc.*, 9:23-bk-90135-BPH, Dkt. No. 85 (D. Mont. March 14, 2024). The stipulation—provided to the Court by BNSF—states in pertinent part that no federal grant money or property held in trust for the benefit of the United States can be used to pay "the FCA Judgment and/or related costs and expenses, including attorney fees and costs." (Doc. 274-1 ¶ 6.)

Yet after review of the stipulation, and without more from CARD, it is not clear how the stipulation has any bearing on whether the Court may grant BNSF's

10

request for appellate attorney fees. The parties are currently conducting discovery to determine federal property interests in CARD. *See BNSF v. CARD*, CV 25-67-M-DLC, Dkt No. 31 (D. Mont. July 11, 2025). This process may provide helpful information regarding the precise origins of CARD's funds and will clarify whether the bankruptcy stipulation provides any defense against execution in this case. (*See* Doc. 274 at 3.) But for now, BNSF is entitled to an award of fees incurred on appeal.

## Conclusion

Based on the foregoing, the Court concludes that a total award of $98,280 in attorneys' fees is appropriate in this matter.

Accordingly, IT IS ORDERED that the motion (Doc. 271) is GRANTED. CARD shall pay BNSF $98,280 in attorneys' fees incurred on appeal.

DATED this 21st day of July, 2025.

_____
Dana L. Christensen, District Judge
United States District Court